UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Virginia Polytechnic Institute and<br>  State University,<br>            Plaintiff | )<br>)<br>)<br>) | |
| | ) | Civil Action No. 7-10-CV-00466 |
| v. | )<br>)<br>) | (Judge Conrad) |
| Hokie Real Estate, Inc.,<br>            Defendant | )<br>) | |

REPLY MEMORANDUM IN SUPPORT OF VIRGINIA TECH'S
MOTION FOR PRELIMINAY INJUNCTION

## Table of Contents

I.     Likelihood of success on the merits ............................................................2

  A.   Trademark Infringement - - Likelihood of Confusion as a result of the
     defendant's use of the HOKIE mark ..................................................2

    1.   The Strength of the HOKIE mark ......................................................2

    2.   Comparison of the marks.....................................................................3

    3.   The services of defendant are similar to the services of Virginia Tech. ...........4

    4.   Trade channels and facilities of Virginia Tech  and defendant are similar. ....5

    5.   Similarity of Advertising ....................................................................5

    6.   Intent .....................................................................................................6

    7.   Actual Confusion ................................................................................6

    8.   Additional *George* likelihood of confusion factors ...........................7

  B.   Dilution by blurring of the famous HOKIE mark .................................8

    1.   Evidence of fame of the HOKIE mark ..............................................8

    2.   The alleged third party uses of the HOKIE mark do not diminish the fame of
     the HOKIE mark....................................................................................9

II.    Irreparable Harm.....................................................................................10

III.   Balance of hardship................................................................................14

IV.    Defendant's arguments regarding the alleged unclean hands of Virginia Tech
   are unsupported and contrary to the facts of this case. ........................14

V.     Conclusion...............................................................................................16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Virginia Polytechnic Institute and State University,   Plaintiff | ) ) ) ) | |
| v. | ) ) ) ) ) | Civil Action No. 7-10-CV-00466 (Judge Conrad) |
| Hokie Real Estate, Inc.,   Defendant | ) ) | |

REPLY MEMORANDUM IN SUPPORT OF VIRGINIA TECH'S
MOTION FOR PRELIMINAY INJUNCTION

Plaintiff Virginia Polytechnic Institute and State University ("Virginia Tech")
submits this reply in support of its motion for preliminary injunction. This
memorandum replies to the defendant's memorandum in opposition that was filed
January 10, 2011.

Virginia Tech remains confident in its request for an award of preliminary
injunctive relief in this case. Respectfully, Virginia Tech believes that many of the
arguments of defendant are fundamentally irrelevant to issues in this case as will be
explained. Virginia Tech is likely to succeed on the merits in this case. In fact,
Virginia Tech is being irreparably harmed by the continuing infringement and dilution
by the defendant at its doorstep. Any harm to defendant as a result of an award of
preliminary injunctive relief is only caused by the defendant's own decision to connect
its business to Virginia Tech goodwill in its valuable HOKIE mark.

1

In this reply, Virginia Tech will not respond to each and every little argument of defendant, because most of those arguments are nothing more than the defendant's disagreement with Virginia Tech.  Instead, Virginia Tech shall focus on the primary arguments of the defendant in the context of this Court's analysis in ruling on a preliminary injunction.

I.    Likelihood of success on the merits

Virginia Tech first turns to the likelihood that it will succeed on the merits of its trademark infringement and dilution by blurring claims.  As in its original memorandum, these two claims shall be divided and discussed separately.

A.    Trademark Infringement - - Likelihood of Confusion as a result of the defendant's use of the HOKIE mark

1.    The Strength of the HOKIE mark

The HOKIE mark is a distinctive and strong mark.  It is a made-up word.  The term "Hokie" has one descriptive (defendant argues generic) meaning - - that is, it describes a student, athlete, alumni, or supporter of Virginia Tech. Otherwise, the HOKIE mark is a strong trademark as used in connection with the sale of goods and services of Virginia Tech.

Defendant seeks to challenge the distinctiveness and strength of the HOKIE mark by presenting the opinions and declaration of Dr. Johann Norstedt.  But the opinions of Norstedt are irrelevant in this case.  Despite his scholarly analysis, the only way to know if "hoki" was either made-up or derived from earlier language is the testimony of Mr. Stull.  Of course, this testimony is not available.  As a result,

Norstedt has his opinion, and Virginia Tech has its opinion. But, regardless of anything Norstedt says, regardless of whether there is a similar old Irish term, the use of the HOKIE mark by Virginia Tech and defendant is not the same as any meaning that is hypothesized by Norstedt. Virginia Tech and defendant use the HOKIE mark as a trademark/service mark and not in any way as any descriptive meaning of the term. Accordingly, whether or not Norstedt's opinion is accurate, this in no way diminishes the trademark rights of Virginia Tech. Any hypothetical origin and history of use of "hoki" is legally irrelevant to the current trademark usage and resulting trademark rights of Virginia Tech.

Finally, defendant argues that Virginia Tech has submitted no evidence to prove secondary meaning of its HOKIES mark. However, Virginia Tech does not need to prove secondary meaning. The HOKIE mark is not used in any descriptive manner. The HOKIE mark when used in connection with the sale of goods and services is distinctive. The defendant's arguments regarding any need to prove secondary meaning are only a distraction.

The bottom line is that the HOKIE mark is a strong mark by definition. The arguments of defendant otherwise do not and cannot change this fact.

2. <u>Comparison of the marks.</u>

The Virginia Tech HOKIE mark is identical to the defendant's HOKIE REAL ESTATE mark.

Virginia Tech does not and has never made any distinction between its use of its HOKIE mark in the singular or plural form.  Virginia Tech has not observed any difference in the consuming public regarding the public's impression of the singular and plural forms.  Both the singular and plural forms of the HOKIE mark are made-up and are associated with Virginia Tech.  The minimal distinction in singular verses plural does not change the overall commercial impression of the HOKIE mark.  *See, In re P-G Industries, Inc.,* 2001 WL 984575 (T.T.A.B. 2001).  The defendant's argument regarding a difference between the singular and plural forms of the HOKIE mark constitute attorney arguments only.  Those arguments are not evidence of a difference in commercial impression of the singular and plural forms in the minds of the consuming public.

It is readily apparent that the marks at issue in this case are effectively identical.

3.    The services of defendant are similar to the services of Virginia Tech.

It is not necessary to reply in detail to this likelihood of confusion factor.  Virginia Tech has explained and demonstrated the similarity between the services.  Defendant disagrees and has submitted its arguments.  Virginia Tech is unmoved by the arguments of the defendant, and the Court should be as well.

4

    4.    <u>Trade channels and facilities of Virginia Tech  and defendant are similar.</u>

It is not necessary to reply in detail to this likelihood of confusion factor.  Virginia Tech has explained and demonstrated the similarity between the trade channels and facilities.  Defendant disagrees and has submitted its arguments.  Virginia Tech is unmoved by the arguments of the defendant, and the Court should be as well.

    5.    <u>Similarity of Advertising</u>

Virginia Tech has already previously explained and demonstrated the similarity between the advertising of Virginia Tech and defendant.  Defendant disagrees and has submitted its arguments.

In its arguments, defendant says that the disclaimer that appears on its website and on its sign displayed in front of its building is somehow sufficient to avoid confusion.  This is a common argument, and Virginia Tech notes that disclaimers generally have been discussed in detail in other trademark cases.  In these cases, the courts have noted that disclaimers are ineffective in curing customer confusion over similar marks.  These disclaimers specifically do not cure the otherwise clear case of likelihood of confusion.  *Volvo Trademark Holding AB v. VolvoSpares.com*, 703 F. Supp. 2d 563, 568-569 (E.D. Va. 2010) (Disclaimer not adequate to negate confusion); *Ohio State University v. Thomas*, ___ F. Supp. 2d ____, 2010 WL 3447848 (S.D. Ohio 2010) (A disclaimer is too late - - it is only read by a consumer after

reaching a website.); *University of Arkansas v. Professional Therapy Services, Inc.*, 873 F.

Supp. 1280, 1292 (W.D. Ark. 1995) (Disclaimer does not cure likelihood of confusion.).

As in the referenced cases, the confusion and damage caused by defendant in this

action have already occurred once a consumer sees the sign in front of the defendant's

office or visits the defendant's website.


6.      Intent

It is not necessary to reply in detail to this likelihood of confusion

factor.  Virginia Tech has explained and demonstrated the intent of defendant to

associate itself with Virginia Tech.  Defendant disagrees and has submitted its

arguments.  Virginia Tech is unmoved by the arguments of the defendant, and the

Court should be as well.


7.      Actual Confusion

It is not necessary to reply in detail to this likelihood of confusion

factor.  Virginia Tech has explained the anecdotal confusion created by defendant's

infringement.  Defendant disagrees and has submitted its arguments.  Virginia Tech is

unmoved by the arguments of the defendant, and the Court should be as well.

8.   Additional *George* likelihood of confusion factors

Defendant has referred to another Fourth Circuit trademark decision that includes two additional factors in the likelihood of confusion analysis.  In the *George* decision, the Fourth Circuit identified and relied on the *Pizzeria Uno* factors, but it also added two additional factors that may be considered in relevant cases.  In fact, in this case, these two additional factors are simply not relevant.

In *George* an eighth likelihood of confusion factor is directed to the quality of the defendant's product or service.  *George & Co., LLC  v. Imagination Entertainment*, 575 F. 3rd 383, 399 (4th Cir. 2009).  As in the *George* decision, this factor has no relevance in this case, because the factor only applies in situations involving the production of cheap copies or knock offs of a trademark-protected good or service.  In this case, there is no evidence, yet, of the services of the defendant being a cheap copy or knock off.  Accordingly, this factor has no relevance in this case.

The ninth factor in the *George* decision relates to the sophistication of the consuming public.  *George*, 575 F. 3d  at 400.  This factor is only relevant when the relevant market is not the public at-large.  In this case as in the *George* case, the relevant market is the public at-large.  Accordingly, this factor is not relevant in this case.

Despite the attempt to make these additional factors relevant in the likelihood of confusion analysis, they are not.  These factors do not change the Court's analysis.

B.    Dilution by blurring of the famous HOKIE mark

Virginia Tech shall not address each and every factor with respect to the fame of the HOKIE mark or each and every one of the dilution by blurring factors as set forth in the statue, 15 USC §1125(c).  Instead, this discussion will focus on the primary issues that have been raised by defendant.

1.    Evidence of fame of the HOKIE mark

The defendant attempts to challenge the fame of the HOKIE mark by relying on editorial comments in a trademark law treatise and on the facts in a nonanalogous trademark logo action.  As explained, the comments and the prior case are not persuasive here.

In its arguments regarding the fame of the HOKIE mark, defendant places substantial weight on the statements by trademark author McCarthy.  In his treatise, McCarthy sets forth a wish that the dilution laws should only provide for and protect famous marks that are known to 75% of the population of the United States.  While this may be a worthy wish, it is not the law.  Defendant cannot rely on a treatise to contradict the statutory requirements in this action.  *See* 15 USC §1125(c)(2)(A) (the definition of fame is set forth with some relevant factors, and nowhere is there a 75%, or any percentage, requirement of public recognition).

Defendant likewise spends a great deal of discussion in trying to compare this action to the University of Texas Longhorn Logo case.  In fact, the University of Texas Logo case reaches a decision that is contrary to the finding of

famous nickname word marks in other cases relating to the JAYHAWK mark

(*University of Kansas v. Sinks,* 644 F. Supp. 2d 1287, 1307 (D. Kan. 2008)), and the

AMERICA'S TEAM mark (*Dallas Football Club, Ltd. v. America's Team Properties,* 316 F.

Supp. 622, 643 (N.D. Tex. 2009)).  Virginia Tech submits that the JAYHAWKS and

AMERICA'S TEAM cases are more analogous to the present case, because they

address the respective nicknames that are word marks in those cases.  These cases are

more analogous than the Longhorn Logo, solely a logo, which was the subject of the

University of Texas case.

Ultimately, plaintiff submits that the defendant's reliance on a

commentator's opinion regarding famous marks and on a non-analogous logo case is

not persuasive.  As Virginia Tech has demonstrated in its earlier analysis of the

specific factors of finding of fame that the HOKIE mark is in fact a famous mark.


2.   The alleged third party uses of the HOKIE mark do not diminish
the fame of the HOKIE mark

There is a great emphasis by the defendant of the business operations

of its neighbors - - Hokie House, Hokie Spokes and Hokie Hair, as being a justification

for defendant's infringing use.  In fact, as demonstrated by Exhibit 3 to the

Supplement Declaration of Locke White, each of these entities has entered into a

licensing agreement with Virginia Tech regarding their continued use of the HOKIE

mark.  Further, the supplemental White declaration also describes the past and

9

ongoing discussion with the user of the Hokie Honda mark, another third party highlighted by defendant.

No doubt, defendant will try to find some perceived fault in the agreements between Virginia Tech and the neighbors of defendant. Regardless, those agreements acknowledge the rights of Virginia Tech in the HOKIE mark. Those agreements specifically allow Virginia Tech to withdraw its authorization of the use of the HOKIE mark by those third parties if their use of the mark becomes inappropriate.

Finally, Virginia Tech recognizes that the Wilburn declaration submitted by the defendant identifies a number of alleged unauthorized third party uses of the HOKIE mark. While some of those usages identified are authorized by Virginia Tech, it is believed that others may not be. Virginia Tech is not surprised that it is faced with many unauthorized uses based on the fame and popularity of the HOKIE mark. However, many if not all of these alleged unauthorized uses are new information to Virginia Tech. Virginia Tech will address them accordingly. It will take on these matters in an orderly fashion. Virginia Tech appreciates this collection of alleged unauthorized third party uses that have now been provided by defendant for the first time.

II.   <u>Irreparable Harm</u>

It is undisputed that trademark infringement and dilution cause irreparable harm to Virginia Tech's valuable HOKIE mark. This irreparable harm is assumed as a matter of law upon the finding of infringement and/or dilution. This is thoroughly

discussed in Virginia Tech's initial memorandum. Defendant has caused and will continue to cause this irreparable harm if allowed to continue.

Defendant argues that delay in filing in this case weighs against a finding of irreparable harm. However, there are other decisions in trademark infringement actions where preliminary injunctions were awarded despite some argued delay in those cases. *National Council of YMCA v. Human Kinetics Publishers, Inc.*, 2006 WL 752960 (N.D. Ill. 2006) (one year delay does not prevent preliminary injunction); *Ty, Inc. v. Publications International, Ltd.*, 81 F.Supp.2d 899 (N.D. Ill. 2000) (preliminary injunction granted despite fourteen month delay); *Rubbermaid Commercial Products, Inc. v. Contico International, Inc.*, 836 F.Supp. 1247 (W.D. Va. 1993) (preliminary injunction granted despite at least eight month, possibly longer, delay); *see also, Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979) (motion for preliminary injunction filed fifteen months after learning of defendant's intentions – entry of preliminary injunction affirmed with modifications).

In its arguments against the finding of irreparable harm, defendant has cited a lengthy body of case law attempting to support its position that Virginia Tech has waited too long to seek preliminary relief in this matter and thus the harm is not irreparable. Defendant has cited a dozen cases as supporting its contentions that a preliminary injunction should not be entered in connection with this trademark infringement and dilution action. In fact, the legal support for defendant's arguments is not compelling.

11

At the outset, seven of those dozen cases cited by defendant do not relate in any way to issues of trademark infringement or dilution. Because of this, these cases may be considered for their teachings in general terms only. They are not relevant for trademark infringement and dilution actions where irreparable harm is established by the infringement and dilution. These cases and their general subject matter include the following: *Quince Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75 (4th Cir. 1989) (Environmental); *Borey v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 934 F.2d 30 (2d Cir. 1991) (Surety); *Ahmad v. Long Island University*, 18 F. Supp. 2d 245 (E.D.N.Y. 1998) (Employment); *Costello v. McEnery*, 767 F. Supp 72 (S.D.N.Y. 1991) (Civil Rights); *Signature Flight Support Corporation v. Landow Aviation Limited Partnership*, 2009 WL 111603 (E.D. Va. 2009) (Lease/Contract); *Southtech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410 (E.D.N.C. 2006) (Employment/Cov. Not to Compete); *Provident Pharmaceutical, Inc. v. Amneal Pharmeceuticals, LLC*, 2008 WL 3843505 (E.D. Va. 2008) (Breach of Contract). To the extent that defendant implies or suggests that these cases are relevant in a trademark infringement action, those implications are incorrect.

Virginia Tech further submits that the defendant has not fully disclosed the specific facts and considerations of the courts in the other cases, trademark cases, that it is relying upon to show no irreparable harm. In *Century Time Limited v. Interchron Limited*, 729 F. Supp. 366 (S.D.N.Y. 1990) the court denied a motion for a temporary restraining order. The court explicitly stated that its decision did not bar the plaintiff in that case from seeking preliminary injunctive relief in that matter. *Century Time*, 729

F. Supp. at 369.  In the *Citibank* case relied upon by defendant, the facts were that the plaintiff had knowledge of the defendant for six years.  *Citibank NA v. City Trust*, 756 F.2d 273, 276-77 (2d Cir. 1985).  In the *Majorica, S.A. v. R.H. Macey & Co., Inc.*, 762 F.2d 7, 8 (2nd Cir. 1985)  case relied upon by the defendant, the court found that the plaintiff *Majorica* was aware of the alleged infringement "for several years" prior to seeking preliminary injunctive relief.  Defendant also relies on *The Media Group* decision, however, that decision includes a number of very specific facts and timing that were the basis for that court denying preliminary injunctive relief.  None of those similar or analogous facts are present in this action.  *The Media Group, Inc. v. Ontel Products Corp.*, 2001 WL 169776 (D. Conn. 2001).  The final case referenced by the defendant is the *Tough Traveler* decision.  *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964 (2d Cir. 1995).  Virginia Tech believes that the facts in this case may be distinguished from the facts and considerations in the *Tough Traveler* case.  *Tough Traveler* was a trade dress knock off case where the motion for preliminary injunction was filed at least thirteen months after knowledge of the infringement.  There was no mention of any communications between plaintiff and defendant in that case.

The bottom line is that defendant is trying to give the impression that there is substantial case law supporting its arguments that there is no irreparable harm in this case.  Upon a closer examination of the defendant's arguments, it is clear that there is limited support for those arguments.  Virginia Tech is suffering irreparable harm.  Virginia Tech is entitled to its preliminary injunction.

13

III.   <u>Balance of hardship</u>

Defendant argues that it would be harmed, and that the harm would be severe

if than injunction is entered against it.  However, any harm is self-created.  Defendant

has known of Virginia Tech's objection since one month after defendant's infringing

and diluting trademark usage started.  There was no delay in the notice of Virginia

Tech to defendant of Virginia Tech's rights in the HOKIE mark.

Moreover, courts have held that the defendant's harm is not considered in this

balance of hardship element in trademark cases.  Defendant has brought any hardship

upon itself by selecting the infringing mark.  *Villanova University v. Villanova Alumni*

*Educational Foundation, Inc.*, 123 F.2d 293, 311 (E.D. Pa. 2000) ("One who uses another's

marks without permission "can hardly claim to be harmed, since it brought any and

all difficulties occasioned by the issuance of an injunction upon itself."").

IV.   <u>Defendant's arguments regarding the alleged unclean hands of Virginia Tech
are unsupported and contrary to the facts of this case.</u>

In its memorandum, defendant alleges a conspiracy theory that is not

supported by any facts or evidence.  Essentially, the alleged wrongdoing revolves

around Virginia Tech's enforcement of trademark rights in its HOKIES mark.  For any

one or more of the following reasons, there has been no wrongdoing.

First, Virginia Tech has always and still believes that the HOKIE mark, as in the

singular or plural forms, is one and the same.  Virginia Tech has treated them the

same.  Virginia Tech has corresponded with third parties regarding Virginia Tech's

rights in the HOKIE mark in both the singular and plural form.  Defendant contends

14

Virginia Tech's actions include a misuse of the "®" designation. However, there is no misuse of or improper use of the "®" designation unless there is an intent to deceive on behalf of the party asserting those rights. Here, there is not and never has been any intent to deceive. Therefore, even if this Court ultimately decides that the use of the "®" symbol in connection with the HOKIE mark in a singular form is improper, that use has been without any deceptive intent. *Elizabeth Arden Sales Corporation v. Faberge, Inc.*, 304 F.2d 891, 893 (C.C.P.A. 1962) (No intent to deceive found when the respective uses were "extraordinaire" and "extrordinaire"); *Rauland Borg Corp. v. TCS Management Group, Inc.*, 1995 WL 242292 (N.D. Ill. 1995) (No intent to deceive the public by marking the single word "Telecenter" instead of "Rauland Telecenter").

Second, Virginia Tech is the owner of U.S. Trademark Registration No. 2,351,364 for the mark HOKIES. The '364 registration identifies a broad range of goods. The defendant has now identified, for the first time, some uses that it suggests are in connection with goods that are not listed on the '364 registration. This use was not and has not been made with any intent to deceive the consuming public. There is no evidence of any intent to deceive.

While Virginia Tech disagrees with a substantial amount of the alleged improper marking, Virginia Tech again appreciates defendant bringing to its attention for the first time the alleged improper marking. Defendant has made prior accusations of improper marking, but defendant has never supplied any specific examples of that alleged mismarking. Virginia Tech will now research and respond accordingly and if appropriate, it will prepare instructions to licensees regarding

15

removal of the registration marking from goods.  The defendant's attempt to now

create a conspiracy based on its earlier, general reference of improper marking,

without any examples, cannot be reasonably used now as a basis for finding a

purported scheme of Virginia Tech regarding the alleged mismarking.

The unclean hand arguments of the defendant make for a good story.  The

arguments are simply not supported by any facts.

V.     Conclusion

Virginia Tech respectfully urges the entry of a preliminary injunction to cut off

any further irreparable harm caused by the infringing and diluting activities of the

defendant.  Favorable action is requested hereon.

Respectfully submitted,

John H. Thomas
Attorney for Plaintiff

Dated:   January 17, 2011

**THOMAS & KARCESKI, P.C.**
536 Granite Avenue
Richmond, Virginia  23226
Phone:  (804) 344-8130
Facsimile:  (804) 644-3643
Jthomas@ip-counsel.net

16

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James R. Creekmore, Esq.
Keith Finch, Esq.
Brian S. Wheeler, Esq.
Attorneys for Defendant Hokie Real Estate, Inc.
THE CREEKMORE LAW FIRM PC
106 Faculty Street
Blacksburg, Virginia  24060
james@creekmorelaw.com
keith@creekmorelaw.com
brian@creekmorelaw.com


John H. Thomas
Attorney for Plaintiff
**THOMAS & KARCESKI, P.C.**
536 Granite Avenue
Richmond, Virginia  23226
Jthomas@ip-counsel.net

17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Virginia Polytechnic Institute and State University, Plaintiff ) ) ) ) ) v. ) ) ) ) Hokie Real Estate, Inc., ) Defendant ) | Civil Action No. 7-10-CV-00466 (Judge Conrad) |

## SUPPLEMENTAL DECLARATION OF LOCKE WHITE

I, Locke White, further declare and say as follows:

1.  I am the same Locke White who submitted my Declaration in support of the Motion for Preliminary Injunction with the original Memorandum in support thereof.  I signed my first Declaration on December 17, 2010.

2.  Attached as Exhibit 3 is a collection of letter agreements between Virginia Tech and Hokie House (1993), Hokie Spokes (1993), Hokie Hair (2000), and Hokie Beach (2001) that were signed by those third-party businesses.  Pursuant to these agreements, the third parties recognize and acknowledge that the HOKIE mark is the property of Virginia Tech.  There are limitations with respect to their continued use of the mark.  At this time, I am not aware of any change in the nature and quality of the businesses named above (except that Hokie Beach is out of business).  Virginia Tech has received no termination or notice of termination of any of these agreements

1

from the third parties. Virginia Tech has not terminated the agreements. They are still in force.

3.      When I began work in the Office of Licensing and Trademarks in 1999, I was told of the earlier written agreements between Virginia Tech and Hokie House and Hokie Spokes. At that time, I was unable to locate copies of those agreements. Accordingly, I sent new letter agreements to Hokie House and Hokie Spokes. An attorney representing Hokie House responded that Hokie House was considering the letter agreement. No further correspondence was ever received from Hokie House. Hokie Spokes responded with marked-up revisions to the proposed letter agreement. Those Hokie Spokes revisions were never signed or agreed to by Virginia Tech. The attached agreements for Hokie House and Hokie Spokes were later discovered after they were identified as being misfiled. There was no need for any further follow up with Hokie House or Hokie Spokes.

4.      During my time with the Office of Licensing and Trademarks, I have been personally involved in the trademark issue with Hokie Honda. I approached Mr. Duncan of Hokie Honda in 2000 over the concern of Virginia Tech with the usage of the HOKIE mark by Hokie Honda. At that time, Mr. Duncan said he would cease use of the HOKIE mark. I believe that he did cease that use.

I declare, under penalty of perjury, that the foregoing is true and correct based on my personal knowledge and information and belief.

Date: ___1/14/11___                               _____
                                                 Locke White

2

## LICENSING AGREEMENT FOR USE OF MARKS IN BUSINESS NAME

Virginia Polytechnic Institute and State University (Virginia Tech) hereby grants _Mfg Holbrox Inc._ (Licensee), incorporated on _May 15_, 19 _75_, in the state of _Virginia_, the right to use the Hokie™ trademark as part of the name _The Hokie House_. This use must adhere to the following guidelines and any violation of these requirements will result in the immediate cancellation of this agreement.

1.      Licensee acknowledges that **Hokie™** is the property of Virginia Tech.

2.      Under this agreement, **Hokie™** may not be used in any form other than its inclusion in the name _The House House_ Any other use of **Hokie™** will be subject to the terms and conditions set forth in the Licensing Agreement.

3.      Virginia Tech reserves the right to require the use of the name _The Hokie House_ in advertisements, promotions and other printed materials or audio/visuals to bear the following disclaimer:

    _The Horse House_ is a private enterprise which is not affiliated in any way with Virginia Polytechnic Institute and State University.

    This includes, but is not limited to use in radio, newspaper and television advertising.

4.      All other use of Virginia Tech trademarks by _Mfg Holbrox Inc._ is governed by the terms and conditions set forth in the Licensing Agreement and will require approvals as outlined in the agreement.

5.      Licensee shall defend, indemnify, and hold harmless Virginia Tech , its officer, employees, and agents from and against any losses and expenses (including attorney's fees), claims, suits, or other liability, including product liability, libel and slander resulting form injury to or death of any person or damage to property arising out of or in any way connected with the exercise of the license granted by this Agreement, provided such injuries to persons or damage to property are due to the acts or commissions or omissions of Licensee, its officers, employees or agents, or the products manufactured or sold by them.

6.      Licensee is an independent business.  Nothing contained herein shall be deemed to create an agency, joint venture, franchise or partnership relationship between the Parties, and neither Party shall hold itself out.  Licensee shall have no right to obligate or bind Virginia Tech in any manner whatsoever, and nothing contained in this Agreement shall give or is intended to give any right of any kind to third persons.

7.      This Agreement shall be construed in accordance with the laws of the Commonwealth of Virginia.

**Licensing Agreement**
**Page Two**

This right is granted for the period of one year, beginning July 1, 1993 and will be renewed each year unless either party objects to continuing this agreement.

**Virginia Polytechnic Institute**
**and State University**

_____

Printed Name

Ann Spencer, Contract Review Officer

_____

Title

_____

Signature

JAN 2 4 1994

_____

Date

**Licensee**

_____

Printed Name

_____

Title

_____

Signature

11/15/93

_____

Date

## LICENSING AGREEMENT FOR USE OF MARKS IN BUSINESS NAME

Virginia Polytechnic Institute and State University (Virginia Tech) hereby grants _New Wheel / Hokie Spokes_ (Licensee), incorporated on _____,19____, in the state of _Virginia_____, the right to use the **Hokie**™ trademark as part of the name _Hokie Spokes_____. This use must adhere to the following guidelines and any violation of these requirements will result in the immediate cancellation of this agreement.

1.  Licensee acknowledges that **Hokie**™ is the property of Virginia Tech.

2.  Under this agreement, **Hokie**™ may not be used in any form other than its inclusion in the name _Hokie Spokes_ Any other use of **Hokie**™ will be subject to the terms and conditions set forth in the Licensing Agreement.

3.  Virginia Tech reserves the right to require the use of the name _Hokie Spokes_ in advertisements, promotions and other printed materials or audio/visuals to bear the following disclaimer:

    > _Hokie Spokes_ is a private enterprise which is not affiliated in any way with Virginia Polytechnic Institute and State University.

    This includes, but is not limited to use in radio, newspaper and television advertising.

4.  All other use of Virginia Tech trademarks by _New Wheel / Hokie Spokes_ is governed by the terms and conditions set forth in the Licensing Agreement and will require approvals as outlined in the agreement.

5.  Licensee shall defend, indemnify, and hold harmless Virginia Tech , its officer, employees, and agents from and against any losses and expenses (including attorney's fees), claims, suits, or other liability, including product liability, libel and slander resulting form injury to or death of any person or damage to property arising out of or in any way connected with the exercise of the license granted by this Agreement, provided such injuries to persons or damage to property are due to the acts or commissions or omissions of Licensee, its officers, employees or agents, or the products manufactured or sold by them.

6.  Licensee is an independent business. Nothing contained herein shall be deemed to create an agency, joint venture, franchise or partnership relationship between the Parties, and neither Party shall hold itself out. Licensee shall have no right to obligate or bind Virginia Tech in any manner whatsoever, and nothing contained in this Agreement shall give or is intended to give any right of any kind to third persons.

7.  This Agreement shall be construed in accordance with the laws of the Commonwealth of Virginia.

Licensing Agreement
Page Two

This right is granted for the period of one year, beginning July 1, 1993 and will be renewed each year unless either party objects to continuing this agreement.

**Virginia Polytechnic Institute
and State University**

_____
Printed Name

Ann Spencer, Contract Review Officer
_____
Title

_____
Signature

DEC - 3  1993
_____
Date

**Licensee**

David Abraham
_____
Printed Name

OWNER
_____
Title

_____
Signature

11/6/93
_____
Date

**Virginia Tech**

VIRGINIA POLYTECHNIC INSTITUTE
AND STATE UNIVERSITY

Licensing and Trademark Administration

600 Country Club Drive (0161)
Blacksburg, Virginia 24061
(540) 231-3748  Fax:  (540) 231-3878

September 20, 2000

Ms. Melinda Mannon
C/O Hokie Hair
217 North Main Street
Blacksburg, Virginia  24060

RE:   **Virginia Tech Trademarks**

Dear Ms. Mannon:

As you know, Virginia Polytechnic Institute and State University ("Virginia Tech") is the owner of all designs, trademarks, trade names, etc., that are associated with Virginia Tech.  We are aware that you have been using the term "Hokie," a Virginia Tech licensed mark (the "Mark"), in your business for some time.  While we do not wish to upset the normal course of your business, nor do we intend to charge you for your use of the Mark, we do wish to establish some ground rules for its use.

We will permit your continued use of the term "Hokie" in your business name, including its usage in a URL (web site "address") for a web page related to your business, provided that its use is in a manner that preserves the integrity, character and dignity of Virginia Tech.  Although we do not wish to impose unnecessary restrictions on your usage of the Mark, we do retain the right to utilize the Mark in any way we deem appropriate and therefore, may withdraw approval for its usage upon 12 months' written notice.

The standard licensing agreement runs for a period of 12 months, from July 1 to June 30, but the agreement will automatically renew for additional 1-year periods.  However, if the university determines that the Mark is being used in an inappropriate manner, we reserve the right to immediately terminate its usage.  This license to use the Mark may not be assigned or sublicensed without written approval from Virginia Tech, including upon the sale of your business, except for a sale to a member of your immediate family.

Although Virginia Tech desires to allow your use of the Mark with as few restrictions as possible, there are several items that the university asks from you in return:

1.      Please do not state or imply that Virginia Tech supports, endorses or sponsors your business.  Additionally, we ask that you indicate Virginia Tech's ownership and control of the Mark in any advertisements (radio, print or otherwise) for your business.  We will be happy to provide appropriate language upon request.

2.      In exchange for Virginia Tech's permission to use the Mark in your business, you agree not to challenge or question, during the period of use or thereafter, the university's rights to the Mark.  You also agree not to use any mark that is confusingly similar to the Mark.  In the event that the university feels the need to take action against a third party to protect the Mark, we request that you assist us in our efforts.  However, you agree that you will not take any action against a third party for use of the Mark without prior written approval of Virginia Tech.

Mannon
September 20, 2000
Page 2

3.    You agree to indemnify and hold harmless the university from any and all claims or causes of action arising from your use of the Mark, whether such claim or cause of action is from third parties, and also to be responsible for any damages or costs connected to your business or your use of the term "Hokie."

4.    You agree to maintain general liability insurance with coverage limits typical for your business. If the university requests, you agree to furnish us with a copy of the certificate of insurance.

We appreciate your willingness to work with Virginia Tech in this matter. Please feel free to call me at 540/231-3748, if you have any questions or concerns about this agreement or your usage of the term "Hokie" in your business.

We have included two (2) copies of this letter. Please sign below to indicate your confirmation of these terms, and return a signed copy to my attention. You may keep the extra copy for your files.

Thank you for your cooperation.

Sincerely,

Locke White
Director of Licensing and Trademark

AGREED:

Melinda C Manna

Title: President

Date: October 31, 2000



Licensing and Trademark Administration

600 Country Club Drive (0161)
Blacksburg, Virginia 24061
(540) 231-3748 Fax: (540) 231-3878

VIRGINIA POLYTECHNIC INSTITUTE
AND STATE UNIVERSITY

September 20, 2000

Ms. Christiana Cranwell
C/O Hokie Beach
203A College Avenue
Blacksburg, Virginia 24060

RE:  Virginia Tech Trademarks

Dear Ms. Cranwell:

As you know, Virginia Polytechnic Institute and State University ("Virginia Tech") is the owner of all designs, trademarks, trade names, etc., that are associated with Virginia Tech. We are aware that you have been using the term "Hokie," a Virginia Tech licensed mark (the "Mark"), in your business for some time. While we do not wish to upset the normal course of your business, nor do we intend to charge you for your use of the Mark, we do wish to establish some ground rules for its use.

We will permit your continued use of the term "Hokie" in your business name, including its usage in a URL (web site "address") for a web page related to your business, provided that its use is in a manner that preserves the integrity, character and dignity of Virginia Tech. Although we do not wish to impose unnecessary restrictions on your usage of the Mark, we do retain the right to utilize the Mark in any way we deem appropriate and therefore, may withdraw approval for its usage upon 12 months' written notice.

The standard licensing agreement runs for a period of 12 months, from July 1 to June 30, but the agreement will automatically renew for additional 1-year periods. However, if the university determines that the Mark is being used in an inappropriate manner, we reserve the right to immediately terminate its usage. This license to use the Mark may not be assigned or sublicensed without written approval from Virginia Tech, including upon the sale of your business, except for a sale to a member of your immediate family.

Although Virginia Tech desires to allow your use of the Mark with as few restrictions as possible, there are several items that the university asks from you in return:

1.  Please do not state or imply that Virginia Tech supports, endorses or sponsors your business. Additionally, we ask that you indicate Virginia Tech's ownership and control of the Mark in any advertisements (radio, print or otherwise) for your business. We will be happy to provide appropriate language upon request.

2.  In exchange for Virginia Tech's permission to use the Mark in your business, you agree not to challenge or question, during the period of use or thereafter, the university's rights to the Mark. You also agree not to use any mark that is confusingly similar to the Mark. In the event that the university feels the need to take action against a third party to protect the Mark, we request that you assist us in our efforts. However, you agree that you will not take any action against a third party for use of the Mark without prior written approval of Virginia Tech.

Cranwell
September 20, 2000
Page 2

3.      You agree to indemnify and hold harmless the university from any and all claims or causes of action arising from your use of the Mark, whether such claim or cause of action is from third parties, and also to be responsible for any damages or costs connected to your business or your use of the term "Hokie."

4.      You agree to maintain general liability insurance with coverage limits typical for your business. If the university requests, you agree to furnish us with a copy of the certificate of insurance.

We appreciate your willingness to work with Virginia Tech in this matter. Please feel free to call me at 540/231-3748, if you have any questions or concerns about this agreement or your usage of the term "Hokie" in your business.

We have included two (2) copies of this letter. Please sign below to indicate your confirmation of these terms, and return a signed copy to my attention. You may keep the extra copy for your files.

Thank you for your cooperation.

Sincerely,

Locke White
Director of Licensing and Trademark

AGREED:

Title: PRESIdent / OWNER

Date: 2/1/01

FEB 2001
Received
Virginia Tech
Licensing Office