CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 5 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, ) ) ) | |
| Plaintiff, ) | Civil Action No. 7:10CV00466 |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| HOKIE REAL ESTATE, INC., ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

Virginia Polytechnic Institute and State University ("Virginia Tech") filed this action

against Hokie Real Estate, Inc. ("Hokie Real Estate"), alleging unauthorized use of the HOKIE

trademark. Virginia Tech asserts claims of false designation of origin and trademark dilution

under the Lanham Act, 15 U.S.C. § 1125, and a supplemental claim of unfair competition under

Virginia law. The case is presently before the court on Hokie Real Estate's motion to dismiss

and Virginia Tech's motion for preliminary injunction. For the reasons that follow, both motions

will be denied.

## Summary of the Facts and Procedural History

The following summary of the facts, which is taken from the plaintiff's complaint, is

accepted as true for purposes of the defendant's motions to dismiss.[1] See Erickson v. Pardus,

551 U.S. 89, 94 (2007).

---

[1] As will be discussed below, the parties adduced additional evidence in support of and in
opposition to the plaintiff's motion for preliminary injunction. In ruling on the defendant's motion to
dismiss, however, the court will limit its consideration to the facts alleged in the complaint. See, e.g.,
CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (explaining that the
United States Court of Appeals for the Fourth Circuit generally adheres to the "Four Corners Rule,"
whereby, in ruling on a Rule 12(b)(6) motion, a court may "consider the complaint itself and any
documents that are attached to it").

Virginia Tech is a state university in Blacksburg, Virginia that was founded in 1872. The university's athletic teams are known as the "Hokies." Likewise, "many or most Virginia Tech alumni recognize themselves as Hokies and are proud members of the so-called Hokie Nation, in recognition of their affiliation with Virginia Tech." (Compl. at para. 8).

According to Virginia Tech, the Hokies nickname originated from a contest held in the late 1890s to come up with a new school cheer. The winning cheer, entered by a member of the class of 1896, later came to be known as "Old Hokie":

> Hoki, Hoki, Hoki, Hy!
> Techs, Techs, V.P.I.!
> Sola-Rex, Sola-Rah.
> Polytechs – Vir-gin-i-a!
> Rae, Ri, V.P.I.!

(Compl. at para. 7).

The Hokies nickname has come to be used as a valuable trademark by Virginia Tech in connection with the sale of a broad range of goods and services. More than ten years ago, Virginia Tech obtained U.S. Registration No. 2,351,364 for the trademark HOKIES®. The registration extends to precious metals and jewelry; paper articles; leather and imitation leather goods; drinking glasses and mugs; waste baskets; and clothing.

Virginia Tech operates an active licensing program with respect to all of its marks. To date, the university has licensed its marks to more than 600 authorized licensees, primarily for the sale and distribution of souvenirs and other retail items. In 2009, Virginia Tech received more than 1.6 million dollars in royalties from licensees.

Virginia Tech maintains that, in addition to the goods covered by the federal trademark registration, the HOKIES or HOKIE mark has been used and associated with many services

2

offered by Virginia Tech, including the sponsorship of alumni groups and student social events, student housing, and educational seminars. Additionally, since 2005, Virginia Tech has been working with an architectural firm to develop the HOKIE HOME program, which consists of home design plans that are to be marketed and sold to Virginia Tech alumni and fans.

In late 2009, Virginia Tech learned that defendant Hokie Real Estate had opened for business in Blacksburg across from the university's campus. Hokie Real Estate is a real estate brokerage firm operated by John Wilburn, a Virginia Tech alumnus. Virginia Tech alleges that it contacted the defendant over the next several months to address the university's concerns regarding the business's use of the HOKIE mark. Ultimately, the parties were unable to reach a resolution.

Virginia Tech filed this action against Hokie Real Estate on October 18, 2010. In Count One, Virginia Tech asserts a claim of false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In Count Two, Virginia Tech asserts a claim of dilution by blurring in violation of 15 U.S.C. § 1125(c). In Count Three, Virginia Tech asserts a Virginia common law claim of unfair competition.

On November 17, 2010, Hokie Real Estate moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In December of 2010, Virginia Tech filed a response to the motion to dismiss as well as a motion for preliminary injunction. The court held a hearing on both motions on February 28, 2011. The motions are ripe for review.

<u>**Summary of the Applicable Law**</u>

I.       <u>**False Designation of Origin**</u>

Section 43(a) of the Lanham Act creates a "federal cause of action for unfair competition." <u>Univ. of Fla. v. KPB, Inc.</u>, 89 F.3d 773, 775 (11th Cir. 1996). The statute prohibits the "use[] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin," which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). The statute's purpose is "to prevent consumer confusion regarding a [service or] product's source, and to enable those that fashion a product [or service] to differentiate it from others on the market." <u>Centaur Communications, Ltd. v. A/S/M Communications, Inc.</u>, 830 F.2d 1217, 1220 (2d Cir. 1987) (internal citations omitted).

In order to prevail on a claim of false designation of origin, the plaintiff must prove five elements: (1) that it possesses a valid, protectable mark; (2) that the opposing party used the mark; (3) that the opposing party's use of the mark occurred "in commerce"; (4) that the opposing party used the mark "in connection with the sale, offering for sale, distribution, or advertising of goods and services"; and (5) that the opposing party "used the mark in a manner likely to confuse consumers." <u>People for the Ethical Treatment of Animals v. Doughney</u>, 263 F.3d 359, 364 (4th Cir. 2001) (internal citations and quotation marks omitted).

4

## II.   **Trademark Dilution**

Claims for trademark dilution are authorized by the Trademark Dilution Revision Act of

2006 ("TDRA"), Pub. L. No. 103-312, 120 Stat. 1730 (2006).[2] Under the TDRA,

> the owner of a famous mark . . . shall be entitled to an injunction against
> another person who . . . commences use of a mark or trade name in
> commerce that is likely to cause dilution by blurring or dilution by
> tarnishment of the famous mark, regardless of the presence or absence of
> actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  Rather than focusing on consumer confusion, trademark dilution centers

on "whether a senior user's distinctive and famous mark is being diluted by another's use of a

similar mark that weakens the strength or damages the reputation of the senior mark." Maker's

Mark Distillery, Inc. v. Diageo N. Am., Inc., 703 F. Supp. 2d 671, 697 (W.D. Ky. 2010) (citing

Jet, Inc. v. Sewage Aeration Systems, 165 F.3d 419, 422 (6th Cir. 1998)).

To state a claim for dilution under the TDRA, a plaintiff must show:

(1)   that the plaintiff owns a famous mark that is distinctive;

(2)   that the defendant has commenced using a mark in commerce that
      allegedly is diluting the famous mark;

(3)   that a similarity between the defendant's mark and the famous
      mark gives rise to an association between the marks; and

(4)   that the association is likely to impair the distinctiveness of the
      famous mark or likely to harm the reputation of the famous mark.

Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264-265 (4th Cir. 2007).

---

[2] The TDRA "amended the Federal Trademark Dilution Act of 1995, Pub. L. No. 104-98, 109
Stat. 985 (1996), which added a 'dilution' cause of action to § 43 of the Lanham Act." Louis Vuitton
Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264 n.2 (4th Cir. 2007).

### III.     Common Law Unfair Competition

Virginia Tech also asserts a claim of unfair competition under Virginia common law. "The test for trademark infringement under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 n.10 (4th Cir. 1995). Consequently, a plaintiff's state law unfair competition claim "rises or falls with [its] federal claim[] . . . of false designation of origin." Lamparello v. Falwell, 420 F.3d 309, 312 n.1 (4th Cir. 2005).

## Hokie Real Estate's Motion to Dismiss

### I.     Standard of Review

The court will first address Hokie Real Estate's motion to dismiss, which was filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [the motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" McBurney v. Cuccinelli, 616 F.3d 393, 408 (4th Cir. 2010) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). Thus, the proper inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claim[s]." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Edwards, 178 F.3d at 244. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its]

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

## II.  Discussion

In moving to dismiss the complaint, Hokie Real Estate asserts four arguments. First, the defendant contends that all three claims are subject to dismissal because the HOKIE mark is generic and, thus, ineligible for trademark protection. Second, the defendant seeks dismissal on the grounds that Virginia Tech "has never registered the term HOKIE," and that HOKIE is legally distinguishable from the HOKIES mark utilized by the university. (Def.'s Br. in Supp. of Mot. to Dismiss at 7). For its third argument, the defendant contends that Counts One and Three are subject to dismissal because "all uses of HOKIE alleged by [Virginia Tech] are on goods and services unrelated to those of defendant." (Def.'s Br. in Supp. of Mot. to Dismiss at 8). Finally, the defendant contends that Count Three fails to state a viable cause of action for dilution. The court will address each of these arguments in turn.

## A.  The nature of the HOKIE mark

In order to prevail on any of its claims, Virginia Tech must "first and most fundamentally prove that it has a valid and protectable mark." U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2003). Whether a mark is entitled to protection depends, first, upon its classification, either as "generic," "descriptive," "suggestive," or "arbitrary/fanciful." Id. The degree of protection accorded to a mark hinges on the extent of the mark's distinctiveness. Id. "Because a generic mark, by definition, neither signifies the source of goods [or services] nor

distinguishes the particular product [or service] from other[s] on the market, a generic term

cannot be protected as a trademark nor registered as one." Retail Servs. Inc. v. Freebies Publ'g,

364 F.3d 535, 538 (4th Cir. 2004); see also U.S. Search, LLC, 300 F.3d at 523 ("If a term is

generic (the common name for a product or service), it is ineligible for protection."); Larsen v.

Terk Techs. Corp., 151 F.3d 140, 148 (4th Cir. 1998) (noting that "'generic marks' are accorded

no protection at all").

     In arguing that the HOKIE mark is generic, Hokie Real Estate relies primarily on the

United States Court of Appeals for the Fourth Circuit's decision in American Online, Inc. v.

AT&T Corp. (AOL), 243 F.3d 812 (4th Cir. 2001), in which the Court held that the phrase "You

Have Mail," when used to announce the presence of an email message, is generic and, thus, not

enforceable as a trademark. In reaching its decision, the Fourth Circuit agreed with the district

court that "when words are used in a context that suggests only their common meaning, they are

generic and may not be appropriated as exclusive property." AOL, 243 F.3d at 820. To

demonstrate this principle, the Court provided the following example:

> [A] debate over whether a word or phrase is being used in a context that
> communicates merely its common meaning can quickly become as
> metaphysical as the study of language itself. At the basic level, we can
> conclude that when a fruit merchant sells fruit as "apples" or
> "blackberries," he should never be able to exclude competitors from
> similarly using the words "apples" or "blackberries" to sell their fruit. But
> if the common word "apple" or "blackberry" is used by a computer
> merchant in selling computers, we conclude that the usage, not the word,
> is so uncommon and therefore "distinctive," that the computer merchant
> should be entitled to exclude other competitors from using "apple" or
> "blackberry" in the sale of its computers.

Id. at 821. The Fourth Circuit emphasized that the task of deciding whether a term is entitled to

trademark protection begins with the determination of whether the would-be trademark falls

within the "heartland of meaning and usage" of the term, and that "[t]he farther a would-be mark falls from the heartland of common meaning and usage, the more 'distinctive' the would-be mark can become." Id.

Relying on the AOL decision, Hokie Real Estate argues that Virginia Tech has acknowledged in the complaint that the term "Hokie" can be defined as "a supporter of Virginia Tech" (Compl. at para. 7), and, thus, that the term is generic when used to refer to a supporter of the university. Stated differently, Hokie Real Estate contends that "using the term 'Hokie' to refer to a supporter of Virginia Tech is like using the term 'apple' to refer to the round, red fruit that grows on trees." (Def.'s Br. in Supp. of Mot. to Dismiss at 3). Consequently, Hokie Real Estate argues that Virginia Tech cannot prevent the general public from using the term to signify its support for the university.

In response, Virginia Tech acknowledges that the term "Hokie" can be used to describe a supporter of the university. Virginia Tech maintains, however, that to hold that this definition renders the HOKIE mark generic would "emasculate[] all trademark rights held by every university or college, every sports team, and frankly, every business." (Pl.'s Br. in Resp. to the Mot. to Dismiss at 5). As Virginia Tech notes, "[a]ny person or business would be free to use any mark for any purpose simply by claiming to support the business of the owner of the mark." Id. Virginia Tech further emphasizes that trademarks are routinely registered by universities, and that courts have consistently held that university nicknames and/or the names of university mascots are entitled to trademark protection. See, e.g., Univ. of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir. 1985) (holding that the BULLDOGS mark was entitled to protection); Texas Tech Univ. v. Spiegelberg, 461 F. Supp. 2d 510 (N.D. Tex. 2006) (holding that the RED

RAIDER nickname was entitled to protection); <u>Villanova Univ. v. Villanova Alumni Educ.</u> <u>Found., Inc.</u>, 123 F. Supp. 2d 293 (E.D. Pa. 2000) (holding that the WILDCATS mark was entitled to protection); <u>Bd. of Trustees of the Univ. of Ark. v. Professional Therapy Services,</u> <u>Inc.</u>, 873 F. Supp. 1280 (W.D. Ark. 1995) (holding that the RAZORBACKS mark was entitled to protection).

Having reviewed the parties' arguments and the applicable case law, the court ultimately concludes that the issue of whether the HOKIE mark is entitled to trademark protection cannot be resolved in the context of a motion to dismiss. It is well-established that "[w]hether a given mark is generic and therefore ineligible for trademark protection is dependent on the particular facts of the case," <u>Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.</u>, 240 F.3d 251, 254 (4th Cir. 2001), and that a Rule 12(b)(6) motion "does not resolve contests surrounding the facts [or] the merits of a claim," <u>Edwards</u>, 178 F.3d at 243. Consequently, it is simply too early in the case to determine whether the HOKIE mark is generic. <u>See, e.g.</u>, <u>McZeal v. Sprint Nextel Corp.</u>, 501 F.3d 1354, 1358 (Fed. Cir. 2007) ("The district court held McZeal's trademark invalid as generic. At [the Rule 12(b)(6)] stage in the litigation, this finding on its face is insufficient because whether a term is generic is a question of fact. Because the trial court ruled on this issue prematurely, we vacate this determination."); <u>Courtenay Communications Corp. v. Hall</u>, 334 F.3d 210, 215 (2d Cir. 2003) ("[I]t is usually true that the classification of a mark is a factual question, and that the question turns on how the purchasing public views the mark. The pleadings and documents necessarily relied upon by plaintiff's complaint, which were all that the district court could rightfully consider in deciding the motion to dismiss for failure to state a claim, are insufficient for determining the critical fact of how the public views [a] mark.");

FragranceNet.com v. Les Parfums, Inc., 672 F. Supp. 2d 328, 333-334 (E.D. N.Y. 2009) (holding "that the question of whether FragranceNet's registered trademarks are generic is a fact-specific inquiry that is inappropriate for determination on a motion to dismiss");

As the Supreme Court has long emphasized, the proper inquiry on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236. Here, the court is convinced that this standard has been met, and that Virginia Tech has asserted sufficient facts to permit it to offer evidence on the validity of the HOKIE mark. Accordingly, the defendant's motion to dismiss will be denied to the extent the defendant argues that the HOKIE mark is generic.

## B.      The alleged distinction between HOKIE and HOKIES

The defendant next argues that Virginia Tech "has never registered the term HOKIE," and that it cannot prevent third parties from using the HOKIE mark in its singular form. (Pl.'s Mem. in Supp. of Mot. to Dismiss at 7). The court agrees with Virginia Tech, however, that this argument is without merit.

In reaching this decision, the court first notes that this is not a case of registered trademark infringement under 15 U.S.C. § 1114(1). The case instead involves claims of false designation of origin and trademark dilution, neither of which requires that a mark be federally registered. See, e.g., U.S. Search, LLC, 300 F.3d at 521 ("Section 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered."); Ale House Mgmt. v. Raleigh Ale House, 205 F.3d 137, 140 (4th Cir. 2000) ("[W]e begin by noting that AHM has not registered 'ale house.' Nevertheless, it may still seek protection under the Lanham Act, which also protects

11

unregistered marks."). Therefore, the mere fact that Virginia Tech has not federally registered the HOKIE mark in its singular form does not preclude the university from attempting to prevent others from using it.

To the extent the defendant suggests that its use of the HOKIE mark in the singular form is legally distinguishable from the HOKIES mark utilized by the university, the court is also unpersuaded. As Virginia Tech points out, the defendant has cited no case law to support the assertion that there is a material difference, in the realm of trademark infringement and dilution, between the singular and plural forms of words. To the contrary, courts have held that "[t]he singular and plural forms of the same word are essentially indistinguishable in the trademark context." Victoria's Secret Stores v. Artco Equipment Co., Inc., 194 F. Supp. 2d 704, 723 (S.D. Ohio 2002) (citing Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47-48 (2d Cir. 1978)); see also Investools, Inc. v. Investtools.com, 2006 U.S. Dist. LEXIS 53119, at *8-9 (E.D. Va. July 17, 2006) ("Investtools.com and investtool.com are both virtually identical to the INVESTOOLS mark, with the former bearing an additional 't' and the latter using the singular form of the word. The . . . difference between the singular form and the plural form does not serve to distinguish the Defendant domain names from Plaintiff's mark."); In re Belgrade Shoe Co., 411 F.2d 1352, 1353 (C.C.P.A. 1969) ("Thus, in sound, the appellant's mark differs from the registered mark primarily in that the former is the plural form of the latter, which we feel does not amount to a material difference in a trademark sense."). Based on the foregoing case law, and in the absence of any authority to the contrary, the court concludes that the defendant's efforts to distinguish its use of the term HOKIE in the singular form are without merit.

## C. The differences between the parties' goods and services

The defendant next argues that Counts One and Three are subject to dismissal because the goods and services for which Virginia Tech uses the HOKIE mark are completely unrelated to the real estate brokerage services offered by the defendant. As previously summarized, the test for false designation of origin under the Lanham Act and unfair competition under Virginia law addresses the likelihood of confusion regarding the source of a particular product or service. If the goods or services offered by the defendant are "totally unrelated" to those of the plaintiff, "there can be no infringement because confusion is unlikely." AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979). For this reason,

> two marks that serve to identify products in two unrelated markets may very well coexist without confusion in the public's eye. Thus, Notre Dame brand imported french cheese has been permitted to coexist with Notre Dame University; Bulova watches with Bulova shoes; Alligator raincoats with Alligator cigarettes; "This Bud's for you" in beer commercials with the same phrase used by a florist; White House tea and coffee with White House milk; Blue Shield medical care plan with Blue Shield mattresses; Family Circle magazine with Family Circle department store; Ole' cigars with Ole' tequila; and Sunkist fruits with Sunkist bakery products. The list continues.

Quality Inns Int'l, Inc. v. McDonald's Corp., 695 F. Supp. 198, 210 (D. Md. 1988) (emphasis in original).

Relying on the foregoing case law, Hokie Real Estate argues that its services are totally unrelated to any of the goods and services for which Virginia Tech uses the HOKIE and HOKIES marks. The defendant emphasizes that all of the items covered by the HOKIES® registered trademark are retail goods such as jewelry, clothing, and glassware, and that none of them bear any relation to real estate brokerage services. Likewise, Hokie Real Estate argues that the complaint provides no indication that any of the university services utilizing the HOKIE mark,

13

such as the Hokie Grill, Hokie Camp, Hokie News, or Hokie Spa, bear any connection to real estate brokerage services. To the extent Virginia Tech alleges that it also uses its HOKIE mark in connection with "housing and real estate services" (Compl. at para. 12-13), and more specifically, the HOKIE HOME program, the defendant argues that the complaint fails to establish that Virginia Tech has actually used the HOKIE designation in commerce as a trademark in connection with home plans or other real estate services. See, e.g., MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 341 (4th Cir. 2001) (noting that, in order to garner trademark protection for a designation, "a plaintiff must show that it has actually used the designation at issue as a trademark; thus the designation or phrase must be used to perform[ ] the trademark function of identifying the source of the merchandise to the customers") (emphasis in original) (internal citation and quotation marks omitted).

In response, Virginia Tech contends that the defendant's efforts to distinguish the services offered by the parties "ignores the Rule 12(b)(6) standard that the allegations of the Complaint are accepted as true," and that "Virginia Tech does not have to engage at this time in the factual battle about the real estate services that it offers for sale in commerce in connection with the HOKIES mark." (Pl.'s Br. in Resp. to Mot. to Dismiss at 7). Virginia Tech emphasizes that paragraphs 12 and 13 of the complaint set forth specific allegations describing the university's involvement in "housing and real estate services . . . associated with the . . . HOKIES nickname and trademark" (Compl. at para. 12), including its efforts to develop the HOKIE HOME program. Virginia Tech further notes that while the complaint acknowledges that the HOKIE HOME program has not been very active, "the Complaint never states that this program is abandoned," or that "there was no use of the HOKIE HOME mark." (Pl.'s Br. in Opp. to Mot. to

14

Dismiss at 9). Thus, the university contends that the facts surrounding the HOKIE HOME program should be developed during discovery, and that any issues pertaining to the differences between the parties' housing-related services should be reserved for "trial and the substantive motions between now and then." (Pl's Br. in Opp. to Mot. to Dismiss at 9).

While the defendant's arguments regarding the dissimilarities between the parties' services may find success on a motion for summary judgment or at trial,[3] the court ultimately agrees with Virginia Tech that a Rule 12(b)(6) motion is not the appropriate vehicle for the court to assess the services offered by the university or compare those services to those offered by the defendant. See Sec'y of State for Defense v. Trimble Navigation Ltd., 484 F.3d 700, 710 (4th Cir. 2007) ("Rule 12(b)(6) . . . limits the court's inquiry; it is not a vehicle for the court to assess the record or 'resolve contests surrounding the facts, [or] the merits of a claim.'") (internal citation and quotation marks omitted). The Fourth Circuit "has consistently held that the likelihood of confusion issue in an infringement claim is an inherently factual determination." Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 171 n.3 (4th Cir. 2005) (citing Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992)). Thus, as a general matter, the issue is "not properly resolved through a motion to dismiss." Gov't Emloyees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 704 (E.D. Va. 2004).

The court recognizes that there may be "unusual" cases in which it is clear from the complaint that the parties' goods or services are totally unrelated as a matter of law. See, e.g.,

---

[3] Indeed, as discussed below, the court is presently unable to conclude from the evidence submitted in connection with Virginia Tech's motion for preliminary injunction that the university will succeed in establishing a likelihood of confusion. Nonetheless, the court is convinced that Virginia Tech's complaint is sufficient to survive the defendant's Rule 12(b)(6) motion.

MCW, Inc. v.Badbusinessbureau.com, 2004 U.S. Dist. LEXIS 6678 (N.D. Tex. Apr. 19, 2004)

(dismissing the plaintiff's claim of unfair competition under the Lanham Act, where the plaintiff

assisted individuals with career counseling and the defendant operated a for-profit consumer

complaint forum). However, the court is unable to conclude that the circumstances of the instant

case fall within that category. As Virginia Tech emphasizes, its complaint specifically alleges

that the university has been involved in housing and real estate services associated with the

HOKIE mark, including the HOKIE HOME program, and that the defendant is also utilizing the

HOKIE mark to offer real estate services for sale in the same community. While Virginia Tech

may not "ultimately prevail" on this issue, the court is convinced that the university "is entitled to

offer evidence to support [its claim]." Scheuer, 416 U.S. at 236.

### D.    The sufficiency of the allegations with respect to Count Two

In its final argument in support of its motion to dismiss, Hokie Real Estate maintains

that Virginia Tech has failed to plead all of the elements required to state a claim for trademark

dilution. Specifically, the defendant contends that the complaint fails to allege that the

defendant's use of the HOKIE mark commenced after the mark became famous, and that the

complaint fails to allege that the defendant has used the HOKIE mark in commerce. For the

following reasons, however, the court concludes that both arguments are without merit.

While the complaint may not quote verbatim from the TDRA, the court is convinced that

the complaint, in its entirety, contains sufficient factual content to "raise a right to relief above

the speculative level." Twombly, 550 U.S. at 570. As Virginia Tech emphasizes in its response,

the complaint alleges that the university "has used the HOKIES and HOKIE marks for many

years," (Compl. at para 20), and it is evident from the complaint that the defendant's use of the

16

HOKIE mark occurred after the mark allegedly became famous. Moreover, the complaint specifically alleges that the defendant is using the HOKIE mark in connection with "its offer for sale of real estate services." (Compl. at para. 14). Accordingly, the court agrees with Virginia Tech that it has sufficiently stated a claim for dilution and, more specifically, has alleged adequate facts to establish "junior use" and "use in commerce" by the defendant.

For all of the foregoing reasons, Hokie Real Estate's motion to dismiss will be denied.

## Motion for Preliminary Injunction

The court will now turn its attention to Virginia Tech's motion for preliminary injunction, in which the university seeks to enjoin the defendant from engaging in any further use of the HOKIE mark. This motion was the primary focus of the hearing held on February 28, 2011, during which both parties presented testimony and other evidence to support their respective positions.

### I.    Standard of Review

A preliminary injunction is an "extraordinary" remedy which may be granted "only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (internal citation and quotation marks omitted). A party seeking preliminary injunctive relief must make a clear showing that it is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in its favor; that it is likely to succeed on the merits; and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008). If all four of these requirements are not satisfied, a preliminary injunction cannot be issued. See The Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S.

17

Ct. 2371, <u>reissued in part on remand</u>, 607 F.3d 355, 356 (4th Cir. 2010) (reissuing the portion of the earlier decision that articulated the requirements for a preliminary injunction).

## II.     Discussion

### A.     Irreparable Harm and Likelihood of Success

To justify an injunction before trial on the merits, the plaintiff must show that the irreparable harm it faces in the absence of preliminary relief is "neither remote nor speculative, but actual and imminent." <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 814 (4th Cir. 1992). Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 926 F.2d 353, 360 (4th Cir. 1991).

In this case, Virginia Tech has presented no evidence of pecuniary harm or actual injury resulting from the defendant's use of the HOKIE mark. Likewise, Virginia Tech has not presented any evidence to support its claim that it will suffer irreparable harm in the absence of a preliminary injunction. Virginia Tech instead relies solely on the presumption of irreparable injury that has been applied in Lanham Act cases involving trademark infringement and dilution. <u>See, e.g.</u>, <u>Eli Lilly & Co. v. Natural Answers, Inc.</u>, 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution."). In this circuit, however, that presumption is not automatic. It may be applied only when the plaintiff demonstrates a likelihood of confusion or dilution. <u>See</u> <u>Scotts Co. v. United Industries Corp.</u>, 315 F.3d 264, 274 (4th Cir. 2002) (holding that the application of the presumption of irreparable harm was precluded since the plaintiff "failed to make even a <u>prima facie</u> showing of consumer confusion"); <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.</u>, 43 F.3d

18

922, 938 (4th Cir. 1995) (noting that a finding of irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears"). Accordingly, the court's analysis of the irreparable harm inquiry "will first require a detour into the substance of [the plaintiff's] Lanham Act claims." See Scotts Co., 315 F.3d at 272.

### 1.    False Designation of Origin

To prevail on a claim of false designation of origin under the Lanham Act, a plaintiff must show, inter alia, (1) that it possesses a protectable mark; and (2) that the use of the mark by the defendant is likely to confuse the public. See People for the Ethical Treatment of Animals, 263 F.3d at 364; see also U.S. Search, LLC, 300 F.3d at 523. As for the latter, a likelihood of confusion exists "if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006) (internal citation and quotation marks omitted). In evaluating whether such confusion exists, the court "look[s] to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." Id.

The Fourth Circuit's likelihood of confusion case law instructs courts to consider nine factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

19

George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); see also Ga. Pac. Consumer Prods., Inc. v. Von Drehle Corp., 618 F.3d 441, 454 (4th Cir. 2010). The Fourth Circuit has emphasized, however, that all of the factors are not always relevant or of equal importance in every case. George & Co., LLC, 575 F.3d at 393. Moreover, while evidence of actual confusion is not required, it is the "most important factor." Id.; see also Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 937 (noting that the actual confusion factor is "entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion").

Having carefully considered the foregoing factors and the evidence submitted by the parties, the court is unable to conclude, at this stage of the litigation, that Virginia Tech has made the requisite showing with respect to the likelihood of confusion.[4] Even if the court assumes, for purposes of the instant motion, that the HOKIE mark is distinctive and that the defendant's mark closely resembles it, Virginia Tech has failed to proffer persuasive evidence regarding the remaining relevant factors.

Turning first to the types of services offered by the parties, the court notes that it must "measure the similarity of services with respect to each party's actual performance in the marketplace." CareFirst, 434 F.3d at 272. When the parties' services are viewed in this manner, the court is convinced, based on the current record, that this factor militates against a finding of likely confusion. Hokie Real Estate provides real estate brokerage services; its owner, John Wilburn, and his employees assist homeowners in selling their properties and provide

---

[4] In light of this decision, the court need not address, at this stage of the litigation, the defendant's argument that the HOKIE mark is generic and, therefore, ineligible for trademark protection altogether. See, e.g., DELEX, LLC v. Delivery Express, Inc., 2002 U.S. Dist. LEXIS 20318, at *16 (D. Ore. Apr. 25, 2002) (noting, in ruling on the plaintiff's motion for preliminary injunction, that it "need not decide who is likely to prevail as to the characterization of . . . the mark [at issue]").

representation to potential home buyers. It is undisputed that Virginia Tech does not offer real estate brokerage services. While the university nevertheless maintains that there is significant overlap between the defendant's services and those offered by the university, the court is unpersuaded.

In attempting to liken its services to those of the defendant, Virginia Tech first argues that it uses the HOKIE mark "in connection with student residence and student life services generally." (Pl.'s Br. in Supp. of the Mot. for Prel. Inj. at 17). While this may be true, the court agrees with the defendant that the mere fact that Virginia Tech provides on-campus housing and other residence life services to students does not render it comparable to a real estate broker.

Likewise, the court is unpersuaded by Virginia Tech's reliance on the HOKIE HOME program, a joint endeavor between the university and Balzer & Associates, an architectural and engineering firm. As the defendant emphasizes, it appears from the current record that the HOKIE HOME program is only in the initial planning stages. While Virginia Tech introduced several concept drawings of proposed HOKIE HOME structures, no actual blueprints or physical structures yet exist, and it is undisputed that no sales have been made. Moreover, Craig Balzer testified during the hearing that his firm has not yet entered into a licensing agreement with Virginia Tech, and that it has not been decided whether the university or the architectural firm will own the intellectual property rights associated with the endeavor.

Moreover, the court agrees with the defendant that even if HOKIE HOME blueprints did exist, and even if they had been sold in commerce, Virginia Tech has failed to demonstrate that they would be sufficiently related to the services provided by the defendant as to give rise to a likelihood of confusion. As the defendant emphasizes, house blueprints are a printed good,

21

whereas real estate brokerage services are provided on a face-to-face basis by a broker to his or her clients. See, e.g., Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 95 (4th Cir. 1997) (affirming the district court's finding that dissimilarities between the parties' services supported a finding of no likelihood of confusion, where one party sold "only fuel," while the other offered, "among other services, maintenance, weighing scales, truck washes, restaurants, retail stores, fax and ATM machines, showers, laundry, quiet rooms, game rooms, television rooms, movie theaters, and even barber shops"); CareFirst, 434 F.3d at 272 (finding that "the actual services offered by the parties [did] not even overlap," since one party "only offers direct medical services to individuals," whereas the other "contracts with participating providers who agree to treat CareFirst members").

The court is also unpersuaded by Virginia Tech's arguments regarding the similarity of the parties' facilities. While the parties are located adjacent to one another in Blacksburg, their facilities differ substantially in appearance. Whereas Virginia Tech's buildings maintain a uniform look through the use of "Hokie Stone," a locally quarried limestone, the defendant's business is housed in a wood-framed building amongst a variety of other private establishments, including restaurants, a cigar shop, three barber shops, a wireless telephone store, and a coin laundry.

Likewise, Virginia Tech has failed to establish that the parties have similar advertising. In comparing the parties' marketing channels, the court must consider a variety of factors, including "the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." CareFirst, 434 F.3d at 273. The application of these factors in the instant case reveals significant differences in the advertising

22

used by the parties. While both parties utilize Internet web sites, the defendant maintains that its

web site merely provides a useful way to convey basic information about its business, and that

the large majority of its business arises from word-of-mouth referrals and face-to-face

networking. In contrast, it would appear that Virginia Tech relies much more heavily on the

Internet, both for marketing and as a means for providing educational services. As the defendant

emphasizes, Virginia Tech's student body includes individuals from out of state and from other

countries, and the university offers an online distance-learning program that permits students to

complete graduate and undergraduate courses from home. In addition, the record reveals that

most of Hokie Real Estate's paid advertising is through real estate magazines that are distributed

to the public for free at the entrances to local grocery stores, restaurants, and other public spaces,

and there is no indication that the university utilizes similar marketing materials.

The court is also unable to conclude from the present record that Virginia Tech can

establish the requisite intent on the part of the defendant. "The intent of a junior user is relevant

only if the junior user intended to capitalize on the good will associated with the senior user's

mark." CareFirst, 434 F.3d at 273; see also Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527

(4th Cir. 1984) ("If there is intent to confuse the buying public, this is strong evidence

establishing likelihood of confusion, since one intending to profit from another's reputation

generally attempts to make his signs, advertisements, etc., to resemble the other's so as

deliberately to induce confusion."). Here, while Virginia Tech argues that it can be inferred that

the defendant intended to profit from the university's reputation by choosing to utilize the

HOKIE mark, Virginia Tech concedes that, at this stage of the litigation, it has no direct evidence

to support its theory. Additionally, given that the defendant's sign, web site, and advertisements

contain a disclaimer that specifically states that it is "not affiliated with Virginia Polytechnic Institute and State University," the court must conclude that this factor, at this stage of the proceedings, favors the defendant.

The seventh and "most significant factor," actual confusion, also weighs in favor of Hokie Real Estate. George & Co., LLC, 575 F.3d at 398. Virginia Tech has acknowledged that it is presently unaware of any actual confusion as a result of the defendant's use of the HOKIE mark. While evidence of actual confusion is not required to prevail under the Lanham Act, the absence of such evidence clearly favors the defendant.

The next factor pertains to the quality of the defendant's services. The court agrees with Virginia Tech that this factor has little relevance in this case, since it typically "applies in 'situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods.'" George & Co., LLC, 575 F.3d at 400 (quoting Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463-64 (4th Cir. 1996)). Nonetheless, the court notes that there has been no suggestion that the services provided by the defendant are of questionable quality.

Finally, the final factor, the sophistication of the consuming public, appears to favor Hokie Real Estate. As the defendant emphasizes, courts have recognized that consumers are more discriminating when they engage in significant commercial transactions than when they make casual purchases:

> Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the service at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When

services are sold to such buyer, other things being equal, there is less likelihood of confusion.

For example, home buyers will display a high degree of care when selecting their real estate brokers, whereas consumers of fast-food are unlikely to employ much care during their purchases.

Daddy's Junk Music Stores v. Big Daddy's Family Music Ctr., 109 F.3d 275, 286 (6th Cir. 1997)

(citations omitted) (emphasis added); see also Homeowners Group, Inc. v. Home Mktg.

Specialists, Inc., 931 F.2d 1100, 1111 (6th Cir. 1991) ("[B]ecause selling one's property is likely

the most significant commercial transaction ever undertaken for most people, [defendant real

estate broker's] customers are likely to carefully select the provider of sales services."). In the

instant case, given the disclaimer cited above, the court agrees with the defendant that it is highly

unlikely that any consumer would choose to engage the defendant's brokerage services based on

the mistaken belief that the defendant is somehow affiliated with the university. See, e.g., Agora

Fin., LLC v. Samler, 725 F. Supp. 2d 491, 505 (D. Md. 2010) (holding that it "is clear from the

plaintiff's supplemental filings that defendant's conduct does not violation Section 43(a) [of the

Lanham Act]. As noted in Part I above, defendant's website provides that 'Tipstrader.com is no

way affiliated with or endorsed or sponsored by [plaintiff's writers] or [plaintiffs] . . .'").

Based on the foregoing, the court concludes that, at this stage of the proceedings, Virginia

Tech has failed to make a clear showing as to the likelihood of consumer confusion required for

Counts One and Three. This finding plainly undermines the university's claim that its reputation

and marks would be irreparably harmed absent the issuance of a preliminary injunction. See

Scotts Co., 315 F.3d at 238 ("[B]ecause we have rejected [Plaintiff's] evidence of consumer

confusion, it follows that the district court erred by applying the presumption of irreparable harm.").

## 2. <u>Dilution</u>

For the following reasons, the court also concludes that Virginia Tech has failed to establish a likelihood of dilution by blurring, as required for the university's claim under 15 U.S.C. § 1125(c). "Dilution by blurring is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). To determine whether there is a likelihood of dilution through blurring, the court may consider a number of factors, including:

> (I)   the degree of similarity between the mark or trade name and the famous mark;
>
> (ii)  the degree of inherent or acquired distinctiveness of the famous mark;
>
> (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;
>
> (iv)  the degree of recognition of the famous mark;
>
> (v)   whether the user of the mark or trade name intended to create an association with the famous mark; and
>
> (vi)  any actual association between the mark or trade name and the famous mark.

<u>Id.</u> The Fourth Circuit has emphasized, however, that "[n]ot every factor will be relevant in every case, and not every blurring claim will require extensive discussion of the factors." <u>Louis Vuitton Malletier S.A.</u>, 507 F.3d at 266.

In light of the evidence presented during the hearing on Virginia Tech's motion, the court is unable to conclude that the university has made a clear showing that it will prevail in establishing a likelihood of dilution. Even if the court assumes, for purposes of the motion, that

the HOKIE mark is famous and distinctive, the court nonetheless concludes that other relevant factors, specifically the third, fifth, and sixth factors enumerated above, militate against a finding of likelihood of dilution.

First and most importantly, the court is unable to conclude that Virginia Tech is engaging in "substantially exclusive use" of the [HOKIE] mark. 15 U.S.C. § 1125(c)(2)(B). While Virginia Tech asserts in its brief in support of the motion that it "believes that the use of the mark is limited solely to Virginia Tech and its licensees," (Pl.'s Br. in Supp. of Mot. for Prelim. Inj. at 26), it is abundantly clear from the evidence presented by the defendant that the university's assertion is inaccurate. Indeed, upon being shown photographs and other exhibits on cross-examination, Locke White, Virginia Tech's Director of Licensing and Trademark, conceded that a multitude of restaurants and other businesses are currently utilizing the HOKIE mark without permission from the university.

For the reasons previously discussed with respect to Counts One and Three, the court is also unable to conclude, based on the current record, that the fifth and sixth factors weigh in favor of the university. Although Virginia Tech maintains that it can be inferred from the record that Hokie Real Estate intended to create an association between its business and the university, John Wilburn testified during the hearing that this was not his intent, and that he decided to name his business Hokie Real Estate merely because he considers himself a Hokie. As for the sixth factor, it is undisputed that Virginia Tech has yet to identify any actual association between its HOKIE mark and the mark used by the defendant. While Virginia Tech contends that it "expects to establish the association between defendant's mark and the famous MARK during discovery"

(Pl.'s Br. in Supp. of Mot. for Prelim. Inj. at 28), the absence of such evidence at this stage of the proceedings weighs in favor of the defendant.

Based on the foregoing, the court is unable to conclude, from the current record, that the defendant's use of the HOKIE mark is likely to cause dilution or consumer confusion. It follows that Virginia Tech has failed to make a clear showing that it is likely to succeed on the merits of its claims, and that it is not entitled to rely on the presumption of irreparable harm. Scotts Co., 315 F.3d at 283. "[W]ithout the presumption . . . , [plaintiff] has [also] failed to establish that, without a preliminary injunction, it will suffer irreparable harm that is 'neither remote nor speculative, but actual and imminent.'" Id. (quoting Direx, 952 F.2d at 812).

### B.     Balance of the Equities

The court further concludes that Virginia Tech has failed to establish that the balance of the equities tips in its favor. Whereas Virginia Tech has not presented any evidence of irreparable harm, the court finds that the defendant would suffer considerable harm if the court was to grant a preliminary injunction. As emphasized during the hearing and in the defendant's brief, a preliminary injunction "would break the continuity of its business (which has been ongoing for a year so far) and force it to start all over in building a new brand name." (Def.'s Br. in Opp. to Mot. for Prelim. Inj. at 46). Additionally, even if the preliminary relief was only temporary, it could "cause members of the community to suppose that [the defendant] ceased doing business because of financial problems, difficulties with creditors, bankruptcy and/or wrongdoing." (Def.'s Br. in Opp. to Mot. for Prelim. Inj. at 46).

Virginia Tech does not contest that an injunction would harm Hokie Real Estate. The university instead contends the defendant brought upon itself any harm an injunction might

inflict by choosing to use the HOKIE mark and, thus, that any harm to the defendant should be disregarded. This argument, however, is contrary to existing Fourth Circuit precedent, which specifically bars courts from giving "short shrift" to the harm a defendant might suffer merely because it is self-inflicted. As the Fourth Circuit emphasized in Scotts Co.:

> The harm to a defendant [in a trademark action] could almost always be described as of the defendant's own making. If self-made harm is given substantially less weight, as it was by the district court in [Scotts], then the balance of the harms will almost always favor the plaintiff, thus transforming a preliminary injunction from an extraordinary remedy into a routine occurrence. And when the purpose behind the requirement that the court balance the harms is recognized, it becomes apparent that it is error to dismiss as self-inflicted the harms that might be suffered by a defendant if an injunction were to issue.

Scotts, 315 F.3d at 284; see also Id. at 285 (again emphasizing that "it is error for a district court to conclude that any harm that would be suffered by a defendant was self-inflicted and thus entitled to lesser weight in the balancing-of-the-harms portion of the preliminary injunction calculus"). In light of the Fourth Circuit's unequivocal instruction on this issue, the court must reject Virginia Tech's argument that any harm to the defendant should be disregarded as self-inflicted.

In sum, because Virginia Tech has failed to make a clear showing that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief or that it is likely to succeed on the merits, and since the balance of the equities tips in the defendant's favor, the court concludes that Virginia Tech is not entitled to a preliminary injunction. Accordingly, the motion for preliminary injunction will be denied.

**Conclusion**

For the reasons stated, the court will deny the defendant's motion to dismiss and the plaintiff's motion for preliminary injunction. The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This __15^th__ day of March, 2011.

_[signature]_

Chief United States District Judge
