UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, Plaintiff / Counterclaim Defendant, <br><br> v. <br><br> HOKIE REAL ESTATE, INC., Defendant / Counterclaim Plaintiff, <br><br> v. <br><br> LOCKE WHITE and <br><br> LAWRENCE HINCKER, Counterclaim Defendants. | Case No. 7-10-cv-00466 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Virginia Polytechnic Institute and State University ("Virginia Tech"), Locke White, and Lawrence Hincker, submit this memorandum in support of their Motion to Dismiss, filed contemporaneously.

### INTRODUCTION

The counterclaims brought by Defendant/Counterclaim Plaintiff Hokie Real Estate, Inc. ("Hokie Real Estate") fail to state a claim on which relief can be granted and therefore should be dismissed in accordance with Rule 12(b)(6) of Federal Rules of Civil Procedure. First, all of the counterclaims should be dismissed as to Virginia Tech on the basis of Virginia Tech's Eleventh Amendment immunity from suit. Second, all the counterclaims against White and Hincker should be dismissed, to the extent asserted against them in their official capacities, on the basis of the Eleventh Amendment, and to the extent asserted against them in their individual

1

capacities, on the basis of their qualified immunity. Third, several of Hokie Real Estate's claims should be dismissed because they are substantively infirm. Even assuming all of the factual allegations in the counterclaims are true, the claims fail as a matter of law.

## RELEVANT FACTS

Virginia Tech owns an incontestable federal trademark registration (Reg. No. 2,351,364) for HOKIES covering a number of goods (the "HOKIES Registration"). In addition to the goods listed in the registration, Virginia Tech has used the HOKIES and HOKIE marks, and other marks containing those terms, in connection with a variety of goods and services through its extensive licensing program. Virginia Tech filed its Complaint against Hokie Real Estate on October 18, 2010. (Dkt. No. 1.) On March 28, 2011, Hokie Real Estate filed six counterclaims against Virginia Tech, adding as counterclaim defendants two Virginia Tech employees, White and Hincker. (Dkt. No. 29.)

## ARGUMENT

I. **Virginia Tech, White, and Hincker Are Immune From Suit Under the Eleventh Amendment and the Doctrine of Qualified Immunity**

    A. **All Counterclaims Against Virginia Tech Must Be Dismissed Under the Eleventh Amendment of the United States Constitution.**

The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long recognized that this Amendment bars federal courts from hearing suits against a state by residents of that state. *Alden v. Maine*, 527 U.S. 706, 733 (1999); *Monaco v. Mississippi*, 292 U.S. 313, 322-23 (1934); *Hans v. Louisiana*, 134 U.S. 1, 21 (1890); *accord Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). The nature of a

state's immunity "flows from the nature of the sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Ernst*, 427 F.3d at 358. The Supreme Court repeatedly has stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 129 S. Ct. 808, 823 (2009) (citation omitted); *see also Smith v. Tolley*, 960 F. Supp. 977, 996 (E.D.Va. 1997). Indeed, dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious immunity defense. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc) (reversing district court's denial of deputy sheriff's motion to dismiss claiming qualified immunity).

As a state agency of the Commonwealth of Virginia, Virginia Tech enjoys Eleventh Amendment immunity from suit identical to that enjoyed by the Commonwealth of Virginia. Virginia Tech was established and remains under the control of the General Assembly of the Commonwealth of Virginia. Va. Code § 23-114. This court has previously found that Virginia Tech is an arm of the state entitled to immunity from suit under the Eleventh Amendment. *Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va 1996), *aff'd*, 103 F.3d 116 (4th Cir. 1996). The fact that Virginia Tech is a state agency is not in dispute; Hokie Real Estate admitted in its answer that Virginia Tech "is a state agency of the Commonwealth of Virginia." (Answer ¶4.)

A state or an arm of the state may only be subject to suit in federal court if (1) Congress divests a state of immunity through a statutory enactment or (2) a state waives its immunity and agrees to be sued in federal court. *McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987). Neither of these circumstances apply here and Virginia Tech's Eleventh Amendment immunity remains intact. Virginia Tech is unaware of any Congressional action that divests it of its immunity from suit, and for that reason it is subject to suit only if it waives its immunity.[1]

---

[1] Congress did attempt in 1992 to abrogate the sovereign immunity of states with the addition of § 40(b) to the Lanham Act, but that provision was overturned in 1999 by the Supreme Court in *College Sav. Bank v. Florida*

Virginia Tech has not waived its sovereign immunity, and its decision to enforce its trademark rights by bringing suit against Hokie Real Estate does not constitute such a waiver.

The Supreme Court consistently has held that initiating litigation simply permits the defendant to raise affirmative defenses and exposes the state only to the equivalent of a compulsory counterclaim that does not exceed in amount or differ in kind from the relief sought by the state. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe*, 498 U.S. 505, 509 (1991); *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 511-12 (1940); *United States v. Shaw*, 309 U.S. 495, 501-02 (1940). Simply put, filing a claim does not create a broad waiver of sovereign immunity; instead, it only allows a defendant to assert *compulsory* counterclaims. *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1148 (4th Cir. 1997) (finding waiver only as to compulsory counterclaims).

The counterclaims Hokie Real Estate asserts are *permissive* counterclaims rather than compulsory under Federal Rule of Civil Procedure 13(a) because they do not arise out of the transaction or occurrence that is the subject matter of Virginia Tech's claims. A number of Hokie Real Estate's claims, such as Counts 1 and 2 of the Counterclaim, allege fraud in connection with statements made to the United States Patent and Trademark Office ("PTO"). Courts have found trademark infringement and fraud claims <u>not</u> to be so logically related as to make the latter a compulsory counterclaim. *Nasalok Coating Corp v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008) (reversing summary judgment and holding that claim for cancellation of asserted registration raises different factual issues than claim for trademark infringement); *Ritz Hotel, Ltd v. Shen Mfg. Co., Inc.*, No. 05-4730, 2009 WL 650382 (E.D. Pa. March 9, 2009) (finding counterclaim for damages for fraudulent procurement of trademark registration

---

*Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (affirming dismissal of false advertising claims again the State of Florida).

4

US2008 2512932.5

permissive rather than compulsory in action for trademark infringement), *rev'd in part on other grounds*, No. 05-4730, 2009 WL 1119496 (E.D. Pa. April 27, 2009).  Similarly, Hokie Real Estate's claims in Counts 3, 4, and 6 related to alleged "illegal marking" by improper use of the ® symbol arise out of facts different from those that form the basis for the claims in Virginia Tech's complaint.  Hokie Real Estate's claims based on misuse of the ® symbol and the related false advertising claims amount to allegations of deception by Virginia Tech and, like allegations that Virginia Tech deceived the PTO in the fraud claims, are not compulsory but instead merely permissive counterclaims.

### B. Claims Brought Against White and Hincker in Their Official Capacities are Barred by the Eleventh Amendment.

Hokie Real Estate's claims in Counts 5 and 6 against White and Hincker in their official capacity effectively are claims against the Commonwealth, and, therefore, also are barred by the Eleventh Amendment.  *Virginia v. Reinhard*, 568 F.3d 110, 115 (4th Cir. 2009) (reversing district court's denial of sovereign immunity where "Virginia's sovereign immunity bars . . . suit against state officials in their official capacities").  In Count 5, Hokie Real Estate alleges that White and Hincker made false statements to the PTO in connection with maintaining Virginia Tech's trademark registration.  In Count 6, Hokie Real Estate alleges that White and Hincker (as well as Virginia Tech) engaged in false advertising by improperly using the ® symbol on products authorized for sale by Virginia Tech.  In both of these claims, White and Hincker were acting on Virginia Tech's behalf in their official capacities, White as the Director of Virginia Tech's Office of Trademark and Licensing and Hincker as Virginia Tech's Associate Vice President for University Relations.  Hokie Real Estate admits as much in its introduction of the parties in paragraphs 3 and 4 of its Counterclaim, and all the allegations related to White and Hincker involve their conduct as university employees in connection with university business.

5

US2008 2512932.5

Just as the Commonwealth is immune from suit under the Eleventh Amendment, so too are its employees sued in their official capacity. As the Supreme Court explained, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). And a suit against the office is simply a suit against the state. *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Since White and Hincker enjoy Eleventh Amendment immunity in their official capacities as Virginia Tech employees, Counts 5 and 6 of the Counterclaims should be dismissed. *See Carboni*, 949 F. Supp. at 433.

### C. Claims Brought Against Hincker and White in Their Individual Capacities are Barred by the Doctrine of Qualified Immunity.

Even if Counts 5 and 6 were not barred against White and Hincker by the Eleventh Amendment, they have qualified immunity from those claims. Qualified immunity shields state employees from suit when they perform discretionary conduct that does not violate "clearly established" constitutional or statutory rights. To survive a motion to dismiss based on claims asserted against White and Hincker acting in their individual capacities, Hokie Real Estate must allege facts sufficient to show that their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Jenkins*, 119 F.3d at 1159. Hokie Real Estate has asserted no such clearly established rights and has alleged no such facts.

In order to overcome the qualified immunity of a government official, a claimant must assert the violation of a clearly established statutory or constitutional right. *See Pearson*, 129 S. Ct. at 823 (finding qualified immunity where "the unlawfulness of the officers' conduct . . . was not clearly established"); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (finding qualified immunity where "neither respondent nor the Court of Appeals has identified any case demonstrating a

clearly established rule prohibiting the officer from acting as he did"). The Fourth Circuit held: "[I]f there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes." *Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001). Virginia Tech is not aware of <u>any</u> precedent in this or any jurisdiction that the Lanham Act's provisions concerning representations to the PTO give rise to clearly established statutory rights overcoming qualified immunity.

Moreover, the Court owes no allegiance to "unwarranted inferences, unreasonable conclusions, or arguments" drawn from the counterclaims. *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009) (internal quotation marks omitted). Rather than allege facts sufficient to demonstrate violation of any clearly established right, Hokie Real Estate only offers unsupported, conclusory allegations of willful or intentional fraud.

In Count 5, Hokie Real Estate alleges that White and Hincker violated 15 U.S.C. § 1120 by submitting inaccurate declarations to the PTO with the intent to deceive the PTO in order to maintain and procure the renewal of Virginia Tech's trademark registration. (Counterclaim ¶105.) Although Hokie Real Estate has alleged that White and Hincker's conduct constitutes fraud on the PTO, it has failed to plead that fraud on the PTO violates its rights or that the alleged violation was clearly established such that the violation would have been known to a reasonable person under the circumstances. In addition, the Counterclaim contains no allegation that White or Hincker could have known of any harm their alleged conduct might have caused Hokie Real Estate.

Hokie Real Estate has also failed to plead the requisite elements necessary to overcome White and Hincker's qualified immunity in connection with Count 6. In Count 6, Hokie Real

US2008 2512932.5

Estate alleges that White and Hincker engaged in false advertising by allowing the registration symbol to appear improperly on products for sale with Virginia Tech's authorization. (Counterclaim ¶109.) It also claims that White and Hincker's conduct deceives or is likely to deceive customers and potential customers. (Counterclaim ¶111.) As in Count 5, Hokie Real Estate has merely alleged conduct directed to third parties. Hokie Real Estate failed to plead that such conduct violates its rights or that the alleged violation was clearly established such that the violation would have been known to a reasonable person under the circumstances. Count 6 also contains no allegation that White or Hincker could have known of any harm their alleged conduct might have caused Hokie Real Estate.

Last, as discussed in more detail below, because Hokie Real Estate does not have standing to bring this false advertising claim, it could not have been clearly established that the alleged conduct violated Hokie Real Estate's rights.

II.   **Any Defects in Virginia Tech's HOKIES Registration do not Affect its Trademark Rights**

The Counterclaims make much of allegedly fraudulent statements Virginia Tech purportedly made in its filings with the PTO. These allegations ignore an axiomatic principle of trademark law: a federal registration *enhances* the protections provided to one's trademark, but does not *create* trademark rights. *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 991 (8th Cir. 1993) (reversing damages award on defendant's claims of fraud because "even without its registrations [plaintiff] still would have had a substantially similar Lanham Act cause of action and an identical state law claim for infringement and unfair competition"); *San Juan Prods., Inc. v. San Juan Pools, Inc.*, 849 F.2d 468, 474 (10th Cir. 1988) ("Unlike the registration of a patent, a trademark registration *does not create the underlying right to exclude . . .[and] the absence of a federal registration does not unleash the mark to public use.*" (emphasis

8

added)). *See also, Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir. 1985); *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2d Cir. 1988). Virginia Tech's trademark rights arise from its longstanding use of the HOKIES mark, not the registration itself. Even by Hokie Real Estate's calculation, Virginia Tech had been using the HOKIES mark in commerce for more than fifty years before Hokie Real Estate entered the marketplace. (Counterclaim ¶13).

In the *Gilbert* case, Gilbert/Robinson, Inc. ("Gilbert"), sued Carrie Beverage-Missouri, Inc. ("Carrie") for infringement of its federally registered HOULIHAN'S OLD PLACE mark. During discovery, Carrie learned that Gilbert fraudulently acquired the registration at issue, and asserted a number of counterclaims alleging fraud on the PTO, including a claim for damages under 15 U.S.C. § 1120. *Gilbert*, 989 F.2d at 989. A jury awarded compensatory and punitive damages to the defendant based on these fraud claims. On appeal, the Eighth Circuit reversed because Carrie's alleged damages were not in the "zone of interests" that the Lanham Act is intended to protect. *Id.* at 990. The Eighth Circuit made clear that "the Lanham Act's purpose of preventing consumer confusion favors resolving infringement suits on the merits . . . [and] should not be invoked to block Lanham Act enforcement of [plaintiff's] marks based upon an ancient nondisclosure to the PTO that has no bearing on whether [plaintiff] today has a superior right to use the marks in commerce." *Id.*

Hokie Real Estate's allegations regarding Virginia Tech's purportedly fraudulent procurement and renewal of the HOKIES registration do not affect Virginia Tech's underlying trademark rights in the HOKIES mark. Furthermore, Hokie Real Estate cannot, as a matter of law, allege any cognizable harm under 15 U.S.C. § 1120 resulting from the allegedly fraudulent statements because Virginia Tech's asserted rights arise from the University's *use* of the

HOKIES mark rather than from the registration alone, and thus Defendant's counterclaims regarding Virginia Tech's alleged fraudulent procurement of its HOKIES registration should be dismissed.

**III.     Fraud Claims Based on Dates of First Use Fail as a Matter of Law.**

In its Counterclaim, Hokie Real Estate alleges that Virginia Tech fraudulently obtained the HOKIES Registration based upon the date of first use claimed in the application. (Counterclaim ¶¶6-19, 86.) Hokie Real Estate contends that Virginia Tech "intentionally sought to distort the historical record" by claiming a date of first use of 1896, when the HOKIES mark was not, it claims, used until 1953. (Counterclaim ¶¶13, 16.) Even accepting Hokie Real Estate's allegations as true, its fraud claims fail as a matter of law.

The PTO and courts have made clear that an erroneous statement of the date of first use is immaterial as "long as the applicant's actual first use precedes the application filing date." *Monster Daddy LLC v. Monster Cable Products, Inc.*, No. 6:10-1170-HMH, 2010 WL 4853661, at *3 (D.S.C. Nov. 23, 2010). *See also Angel Flight of Ga. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008); *Pony Express Courier Corp. of Amer. v. Pony Express Delivery Service*, 872 F. 2d 317, 319 (9th Cir. 1989); *Lewis v. Microsoft Corp.*, 410 F. Supp. 2d 432, 438 (E.D.N.C. 2006); *Hiraga v. Arena*, Cancellation No. 92047976, 2009 WL 723334 (T.T.A.B. March 18, 2009).

Hokie Real Estate's fraud claim relies on its allegation that Virginia Tech's trademark application, filed on October 2, 1998, erroneously claims a date of first use of 1896 rather than 1953. Even assuming Hokie Real Estate's dates are accurate, Virginia Tech's date of first use in its trademark application is immaterial, and therefore not fraudulent, as a matter of law. Even under the pleaded facts, Virginia Tech's application was filed some 45 years after the mark was first used in commerce. Because Hokie Real Estate's claims based on the alleged incorrect date

10

of first use of the HOKIES mark are immaterial and cannot support a claim of fraud, they should be dismissed.

IV. **Hokie Real Estate Lacks Standing to Assert Claims for Alleged Misuse of the Trademark Registration Symbol.**

Misuse of the trademark registration symbol, "®," may amount to false advertising only in exceptional cases. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 CIV 10175 JSM, 2001 WL 170672, *13-14 (S.D.N.Y. Feb. 21, 2001) (denying as moot motion for summary judgment on false advertising claim arising from misuse of ® symbol); *Li'l Red Barn, Inc. v. Red Barn Sys., Inc.*, 322 F. Supp. 98, 110-11 (N.D. Ind. 1970), *aff'd*, 174 U.S.P.Q. 193 (7th Cir. 1972) ("[W]hether or not a mark is registered is entirely immaterial to the average member of the public.").[2] To establish standing for a false advertising claim, Hokie Real Estate must demonstrate that it is a competitor of Virginia Tech, White, and Hincker or that it will suffer a competitive business injury. *See Foster v. Wintergreen Real Estate Co.*, 363 Fed. Appx. 269, 275 (4th Cir. 2010) (finding consumers lack standing to sue for false advertising); *Mylan Labs.*,

---

[2] Count 6 alleges that Virginia Tech, White, and Hincker engaged in false advertising under 15 U.S.C. § 1125(a)(1)(B) through improper use of the ® symbol. (Counterclaim ¶¶108-115.) Counts 3 and 4 also allege misuse of the ® symbol, but merely refer to 15 U.S.C. § 1119, which states:

> "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."

15 U.S.C. § 1119 confers jurisdiction on the courts to rectify the trademark register; this section provides a remedy, but is not an independent basis for relief. *See Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 874 (3rd Cir. 1992) ("[W]e do not believe the court intended to construe section 37 [of the Lanham Act, 15 U.S.C. § 1119,] to provide a cancellation remedy in the absence of an underlying basis of jurisdiction."); *Thomas & Betts Corp. v. Panduit Corp.*, 48 F. Supp. 2d 1088, 1092-3 (N.D. Ill. 1999) (explaining that § 1119 defines available remedies under the Lanham Act); *Clamp-All Corp. v. Cast Iron Soil Pipe Institute*, No. 84-1325-Z, 1987 WL 9760, *7 n. 12 (D. Mass. 1987) (explaining that § 1119 alone is "not an independent source of jurisdiction, however; it merely defines certain available remedies"). Because Counts 3 and 4 address Virginia Tech's alleged misuse of the ® symbol, Virginia Tech assumes Hokie Real Estate is seeking relief under the false advertising provision of the Lanham Act as expressly stated in Count 6. If this is not the case, Virginia Tech reserves the right to address any other alleged basis of relief in Counts 3 and 4.

11

*Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) ("The Lanham Act is primarily intended to protect commercial interests . . . . [I]t provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising."). The Counterclaim does not include either allegation.

Hokie Real Estate claims that Virginia Tech, White, and Hincker's alleged misuse of the ® symbol is likely to influence purchasers' decisions in selecting officially licensed collegiate-branded merchandise. (Counterclaim ¶110.) Because Hokie Real Estate does not allege that it is a competitor, it must be asserting its false advertising claim as a consumer or on behalf of consumers. But consumers do not have standing to allege false advertising claims. *See Foster*, 363 Fed. Appx. at 275. Hokie Real Estate has not asserted any facts establishing that it is a competitor of Virginia Tech, White, and Hincker or that it has suffered a competitive injury. Accordingly, Hokie Real Estate's claims for improper use of the ® symbol in Counts 3, 4, and 6 must be dismissed for lack of standing.

## CONCLUSION

In light of the foregoing, Counterclaim Defendants Virginia Tech, White, and Hincker request that this Court dismiss with prejudice all claims asserted against them in the Counterclaim.

Dated:  April 18, 2011

Respectfully submitted,

*/s/ Kay Heidbreder/*
Kay Heidbreder, VA 22288
University Legal Counsel & Special Assistant
Attorney General
Stephen Capaldo, VA 74045
Associate University Legal Counsel & Special
Assistant Attorney General
VIRGINIA POLYTECHNIC INSTITUTE AND
STATE UNIVERSITY

236 Burruss Hall  
Blacksburg, VA 24060  
Telephone: (540) 231-6293.

R. Charles Henn Jr. (*pro hac vice*)  
Alex S. Fonoroff (*pro hac vice*)  
Alicia Grahn Jones (*pro hac vice*)  
Harris W. Henderson (*pro hac vice*)  
KILPATRICK TOWNSEND & STOCKTON LLP  
1100 Peachtree Street, Suite 2800  
Atlanta, Georgia 30309-4530  
Telephone: (404) 815-6500  
Facsimile: (404) 815-6555

*Attorneys for Plaintiff & Counter-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James R. Creekmore, Esq.
Keith Finch, Esq.
Brian S. Wheeler, Esq.
Attorneys for Defendant Hokie Real Estate, Inc.
THE CREEKMORE LAW FIRM PC
106 Faculty Street
Blacksburg, Virginia 24060
james@creekmorelaw.com
keith@creekmorelaw.com
brian@creekmorelaw.com

                                                           /s/ *[signature]*
                                                       Counsel for Virginia Tech