CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 08 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, | )<br>)<br>) |
| Plaintiff / Counterclaim Defendant, | )<br>) |
| v. | ) Civil Action No. 7:10CV00466<br>) |
| HOKIE REAL ESTATE, INC., | ) **MEMORANDUM OPINION**<br>) |
| Defendant / Counterclaim Plaintiff, | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| v. | )<br>) |
| LOCKE WHITE and LAWRENCE HINCKER, | )<br>)<br>) |
| Counterclaim Defendants. | ) |

On October 18, 2010, Virginia Polytechnic Institute and State University ("Virginia Tech") commenced this action against Hokie Real Estate, Inc. ("Hokie Real Estate"), asserting claims of false designation of origin and trademark dilution under the Lanham Act, 15 U.S.C. § 1125, and a supplemental claim of unfair competition under Virginia law. All three claims stem from the defendant's use of the HOKIE trademark. After the court denied Hokie Real Estate's motion to dismiss the complaint and Virginia Tech's motion for preliminary injunction, Hokie Real Estate filed counterclaims against Virginia Tech; Locke White, Director of Virginia Tech's Office of Licensing and Trademarks; and Lawrence Hincker, Virginia Tech's Associate Vice President for University Relations. Virginia Tech, White, and Hincker have now moved to dismiss the counterclaims. In addition, Virginia Tech has moved to amend the complaint and reopen the time for expert disclosures. The court held a hearing on the motions on May 24, 2011. For the reasons that follow, the motions will be granted.

## Motion to Dismiss

### I. Background

In May of 2000, Virginia Tech obtained a federal registration for the HOKIES trademark. The registration extends to precious metals and jewelry (International Class 14); paper goods (International Class 16); leather and imitation leather goods (International Class 18); glassware (International Class 21); and clothing (International Class 25). The federal registration permits Virginia Tech to use the symbol ® on goods covered by the registration.

Hokie Real Estate's counterclaims are based, in part, on acts of fraud that were allegedly committed by Virginia Tech, Locke White, and Lawrence Hincker in conjunction with the university's efforts to obtain and renew its federal trademark registration. Hokie Real Estate first alleges that Virginia Tech falsified its date of first use of the term HOKIES when the university submitted its trademark application to the United States Patent and Trademark Office ("PTO") on October 2, 1998. To support the application, Virginia Tech submitted a declaration stating that the university's first use of the HOKIES mark occurred at least as early as November 11, 1896. Virginia Tech also submitted a declaration that confirmed the truth of all of the facts set forth in the trademark application. Relying on an affidavit from a retired Virginia Tech professor, Virginia Tech's responses to discovery requests, and its own review of university newspapers and yearbooks, Hokie Real Estate alleges that Virginia Tech did not use the term HOKIES in or before 1896, that the university has no evidence of its alleged use of the term in or before 1896, and that the university's statements to the contrary in support of its trademark application were clearly false.

Hokie Real Estate also alleges that White and Hincker were responsible for false statements made in connection with Virginia Tech's efforts to renew its federal trademark registration. Specifically, Hokie Real Estate alleges that White and Hincker prepared and submitted declarations in 2005 and 2010, which stated that the term HOKIES was then in continuous use on all of the goods listed in the registration, when, in fact, the term was not being used on or in connection with tie tacks or gold pins in International Class 14, brief cases in International Class 18, or bath robes in International Class 25.

Hokie Real Estate also alleges that Virginia Tech has used, and continues to use, the federal registration symbol with the term HOKIE (singular), which is not registered. Hokie Real Estate contends that information provided during discovery demonstrates that Virginia Tech, White, and Hincker are aware that the term HOKIE is not registered and that it is unlawful to use the registration symbol in connection with the unregistered mark. Nonetheless, according to Hokie Real Estate, the counterclaim defendants have marketed items containing the fraudulent marking and/or permitted the federal registration symbol to be used improperly.

Hokie Real Estate further alleges that Virginia Tech has unlawfully used the federal registration symbol with the term HOKIES on classes of goods for which the term is not registered. As previously noted, Virginia Tech obtained registration of the HOKIES mark in only five international classes. Hokie Real Estate alleges that the university has nonetheless approved the use of the federal registration symbol on a variety of products that do not fall within one of the classes covered by the registration.

Based on the foregoing allegations, Hokie Real Estate has asserted six counterclaims. In Counterclaim One, filed against Virginia Tech, Hokie Real Estate seeks an order cancelling the

registration of the HOKIES mark, pursuant to 15 U.S.C. §§ 1119 and 1064(3), on the basis that Virginia Tech made false representations of material fact in its initial trademark application and in the declarations submitted to renew the registration. In Counterclaim Two, filed against Virginia Tech, Hokie Real Estate seeks rectification of the trademark registry under 15 U.S.C. § 1119. Specifically, Hokie Real Estate requests an order requiring deletion of the 1896 date of first use in the university's federal registration. In Counterclaim Three, filed against Virginia Tech, Hokie Real Estate seeks a determination of registration rights in the term HOKIE under 15 U.S.C. § 1119. In Counterclaim Four, filed against Virginia Tech, Hokie Real Estate seeks a determination of registration rights in the term HOKIES under 15 U.S.C. § 1119. In Counterclaim Five, filed against White and Hincker, Hokie Real Estate seeks damages under 15 U.S.C. § 1120, based on false statements allegedly made in connection with declarations filed in support of Virginia Tech's efforts to renew its federal registration. In Counterclaim Six, filed against Virginia Tech, White, and Hincker, Hokie Real Estate asserts a claim of false commercial advertising or promotion under 15 U.S.C. § 1125(a)(1)(B), based on the "numerous illegal markings with the federal registration symbol ("®") of products bearing the terms HOKIE and HOKIES effected or authorized by [Virginia Tech], White, and Hincker." (Docket No. 29 at 25).

## II. <u>Standard of Review</u>

Virginia Tech, White, and Hincker have moved to dismiss the counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937,

1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

### III. Discussion

#### A. Counterclaims against Virginia Tech

As a public university, Virginia Tech is considered an arm of the state. Consequently, the university is entitled to the Commonwealth's sovereign immunity under the Eleventh Amendment to the United States Constitution. See Carboni v. Meldrum, 949 F. Supp. 427, 433 (W.D. Va. 1996) (holding that Virginia Tech enjoyed Eleventh Amendment immunity).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Amendment has been read to make "an unconsenting State . . . immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). It "protects 'state agents and state instrumentalities' as well as the States themselves." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479 (4th Cir. 2005) (quoting Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)); see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,

506 U.S. 139, 144 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court.").

The Eleventh Amendment bar to suit is not absolute. Instead, it is subject to several well-established exceptions:

> Sovereign immunity does not, for example, prevent the United States itself from bringing suit against an unconsenting State to ensure compliance with federal law. Moreover, Congress may abrogate a State's immunity pursuant to its enforcement power under § 5 of the Fourteenth Amendment. A State, of course, may waive its immunity by consenting to be sued in federal court. And . . . the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law.

Bragg v. W. Va. Coal Ass'n, 248 F.3d 275, 291-292 (4th Cir. 2001) (internal citations and quotation marks omitted).

In this case, Hokie Real Estate advances three arguments to support its position that the Eleventh Amendment does not bar the counterclaims against Virginia Tech. First, Hokie Real Estate argues that the Eleventh Amendment does not preclude claims for equitable relief against a state agency. Second, Hokie Real Estate contends that Virginia Tech waived its Eleventh Amendment Immunity by registering the HOKIES mark. Finally, Hokie Real Estate argues that Virginia Tech waived its immunity by commencing the instant action in federal court. The court will address each of these arguments in turn.

Hokie Real Estate's first argument, that the Eleventh Amendment only bars claims for damages against state agencies and does not preclude claims for equitable relief, is without merit. The decisions cited by Hokie Real Estate, such as Bright v. McClure, 865 F.2d 623 (4th Cir. 1989), applied the exception to Eleventh Amendment immunity announced by the United States Supreme Court in Ex parte Young, 209 U.S. 123 (1908). That exception, however, "which

6

permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law," McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010), does not apply "in suits against the States and their agencies, which are barred regardless of the relief sought," Puerto Rico Aqueduct & Sewer Auth., 506 U.S. at 146. See also South Carolina Ports Auth. v. FMC, 243 F.3d 165, 177 (4th Cir. 2001) (noting that Ex parte Young is "irrelevant" when a private party brings a complaint for legal and equitable relief against a state agency).

In its second argument, Hokie Real Estate contends that even if Virginia Tech is entitled to protection under the Eleventh Amendment, Virginia Tech constructively waived its immunity by registering the HOKIES mark. For the following reasons, the court agrees with Virginia Tech that this argument is foreclosed by the Supreme Court's decision in Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 527 U.S. 627 (1999).

In College Savings Bank, the Supreme Court was presented with the question of whether a state agency retains its Eleventh Amendment immunity in an action brought pursuant to the Trademark Remedy Clarification Act, even after the agency engages in activities regulated by the Lanham Act.[1] College Savings Bank, 527 U.S. at 668. Expressly overruling existing precedent

---

[1] By enacting the Trademark Remedy Clarification Act of 1992 (TRCA), Congress attempted to abrogate state sovereign immunity in actions filed under the Lanham Act. The TRCA amended the Lanham Act to provide that state entities "shall not be immune, under the eleventh amendment . . . from suit in Federal court . . . for any violation under this Act," and that remedies shall be available against state entities "to the same extent as such remedies are available . . . in a suit against" non-state entities. Pub. L. 102-542, 106 Stat. 3567 (codified at 15 U.S.C. § 1122). In College Savings Bank, however, the Supreme Court invalidated Congress's attempt to abrogate state sovereign immunity, holding that this portion of the TRCA was an improper exercise of Congress's power under § 5 of the Fourteenth Amendment. College Savings Bank, 527 U.S. at 672-676.

In this case, Hokie Real Estate does not contend that there has been any valid abrogation of the university's sovereign immunity. Instead, Hokie Real Estate argues that Virginia Tech waived its sovereign immunity.

and its "constructive-waiver experiment [as] ill conceived," Id. at 680, the Court held that a State cannot be deemed to have waived its immunity merely by engaging in otherwise lawful activity, even if such activity is subject to congressional regulation, Id. at 680-687. In reaching this decision, the Court specifically distinguished, as "fundamentally different," conditional-spending cases such as South Dakota v. Dole, 483 U.S. 203 (1987), in which the Court held "that Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions." Id. at 686. As the Court explained:

> . . . Congress has no obligation to use its Spending Clause power to disburse funds to the states; such funds are gifts. In the present case, however, what Congress threatens if the State refuses to agree to its condition is not the denial of a gift or a gratuity, but a sanction: exclusion of the State from otherwise permissible activity. Justice Breyer's dissent acknowledges the intuitive difference between the two, but asserts that it disappears when the gift that is threatened to be withheld is substantial enough. Perhaps so, which is why, in cases involving conditions attached to federal funding, we have acknowledged that the financial inducement offered by Congress might be so coercive as to pass the point at which pressure turns into compulsion. In any event, we think where the constitutionally guaranteed protection of the States' sovereign immunity is involved, the point of coercion is automatically passed — and the voluntariness of waiver destroyed — when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity.

Id. at 686-687 (internal citations and quotation marks omitted).

Applying College Savings Bank, the court concludes that Virginia Tech did not voluntarily waive its sovereign immunity by choosing to participate in the federally regulated trademark process. While Hokie Real Estate contends that a registered trademark constitutes a "gift" or "gratuity" from the federal government, the court is unpersuaded by this argument and

the district court decision on which Hokie Real Estate relies. See McGuire v. Regents of the Univ. of Mich., No. 2:99CV1231, 2000 U.S. Dist. LEXIS 21615 (S.D. Ohio Sept. 21, 2000). Instead, the court agrees with Virginia Tech that the university engaged in otherwise lawful commercial activity by registering its HOKIES mark, and that conditioning participation in this congressionally regulated process on a waiver of sovereign immunity would constitute a "sanction," specifically, the "exclusion of the State from otherwise permissible activity." College Savings Bank, 527 U.S. at 687. As Virginia Tech emphasizes in its reply brief, "[s]uch an exclusion would negate the constitutionally-required voluntariness of any waiver, and thus could not be allowed." (Reply Br. at 16). For these reasons, the court concludes that Virginia Tech is entitled to assert its immunity from suit notwithstanding its voluntary participation in the federal trademark registration system.

In its final argument, Hokie Real Estate maintains that Virginia Tech waived its immunity by commencing the instant action in federal court. For the following reasons, however, the court concludes that this argument is also unavailing.

The Fourth Circuit has held that a state that voluntarily commences an action in federal court only waives its Eleventh Amendment immunity against compulsory counterclaims. See In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140, 1148 (4th Cir. 1997) (emphasizing that "well-established principles of sovereign immunity dictate that this waiver be narrowly construed"). A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a); see also Sheehan v. W. Va. Dep't of Envtl. Prot., 55 F. App'x 121, 124 (4th Cir. 2003).

In determining whether a counterclaim is compulsory, the Fourth Circuit has identified four relevant inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same?
>
> (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?
>
> (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and
>
> (4) Is there any logical relationship between the claim and counterclaim?

Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988).[2] The "underlying thread" to each inquiry is "evidentiary similarity," and "where . . . the same evidence will support or refute both the claim and the counterclaim, the counterclaim will almost always be compulsory." Id.

Applying the factors set forth in Painter, the court concludes that Hokie Real Estate's counterclaims are not compulsory. Whereas Virginia Tech's claims are based on its alleged ownership of a protected trademark, Hokie Real Estate's use of the mark, and the likelihood of dilution and consumer confusion resulting from the defendant's actions, Hokie Real Estate's counterclaims are based on the university's alleged misuse of the federal registration symbol and on the university's allegedly fraudulent actions in obtaining registration of the HOKIES mark. The court agrees with Virginia Tech that there is little overlap of issues of fact and law between

---

[2] Hokie Real Estate contends that the court should also consider any similarities between its counterclaims and its own affirmative defenses. However, as Rule 13(a) and Painter make clear, the determination of whether a defendant's counterclaims are compulsory hinges on whether the plaintiff's claims and the defendant's counterclaims arise out of the same transaction or occurrence. See also Nasalok Coating Corp. v. Nylok Corp., 522 F.3d 1320, 1326 (Fed. Cir. 2008) ([T]he question is the extent of factual overlap between what the plaintiff must establish to prove its claim and what the defendant must establish to prove its counterclaim. The mere possibility that, as a result of affirmative defenses, the first suit might involve additional issues does not obligate the defendant to assert those affirmative defenses as a counterclaim.") (emphasis in original).

10

Virginia Tech's claims and Hokie Real Estate's counterclaims; that the doctrine of res judicata would not preclude Hokie Real Estate from raising its counterclaims in a subsequent proceeding; that Virginia Tech's claims and Hokie Real Estate's counterclaims will not be supported or refuted by substantially the same evidence; and that any relationship between the parties' claims is not sufficient to make the counterclaims compulsory.

In reaching this conclusion, the court is guided by the United States Court of Appeals for the Federal Circuit's decision in Nasalok Coating Corp. v. Nylok Corp., 522 F.3d 1320 (Fed. Cir. 2008), in which the Court was presented with the question of whether a claim of trademark invalidity is a compulsory counterclaim to a claim of trademark infringement. The Court ultimately answered the question in the negative, holding that the claims did not arise out of the same transaction or occurrence:

> In this case, Nylok's trademark infringement claim was based on Nylok's alleged ownership of a registered mark, Nasalok's alleged use of the color blue in nylon patches on the external threads of self-locking fasteners, its promotion of those fasteners in advertisements in publications distributed in the United States, and the likelihood of confusion of the consuming public as a result of Nasalok's activities. Invalidity of the mark was an affirmative defense that could have been raised, not part of the plaintiffs' cause of action. Nasalok's cancellation petition, by contrast, was based on alleged attributes of Nylok's registered mark that rendered it subject to cancellation, including allegations that the mark was functional and was a phantom mark, and on Nylok's allegedly fraudulent actions in obtaining registration of the mark. In this case, therefore, the "essential facts" alleged by Nylok in its infringement action – related to Nylok's ownership of the mark and Nasalok's allegedly infringing behavior – do not form the basis of the cancellation claim now asserted by Nasalok, which is based on attributes of Nylok's mark and on Nylok's actions in obtaining registration of that mark. The two claims raise different legal and factual issues, will not be supported or refuted by substantially the same evidence, and are not "logically related" . . . . Therefore, the claims do not arise out of the same "transaction or occurrence," and the petition to cancel was not a compulsory counterclaim in the infringement action.

Nasalok, 522 F.3d at 1326 (internal citations omitted).

Having considered the parties' arguments, the court finds the Federal Circuit's rationale persuasive. The court likewise concludes that Hokie Real Estate's counterclaims are not compulsory and, thus, that Virginia Tech did not waive its sovereign immunity by filing the instant action. Accordingly, Virginia Tech is immune from liability under the Eleventh Amendment, and the counterclaims against the university are subject to dismissal.

### B. Counterclaims against White and Hincker

White and Hincker are named in Counterclaims Five and Six. In Counterclaim Five, Hokie Real Estate seeks damages under 15 U.S.C. § 1120, based on false statements allegedly made in connection with declarations filed in support of Virginia Tech's efforts to renew its federal registration. In Counterclaim Six, Hokie Real Estate asserts a claim of false commercial advertising or promotion in violation of 15 U.S.C. § 1125(a)(1)(B).

To the extent White and Hincker have been countersued in their official capacities, the claims for monetary damages are barred by the Eleventh Amendment. It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, "[f]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." Ballenger v. Owens, 352 F.3d 842, 845 (4th Cir. 2003).

To the extent White and Hincker have been countersued in their individual capacities, and to the extent the Eleventh Amendment does not bar Hokie Real Estate's official capacity claims for prospective injunctive relief, see Ex Parte Young, 209 U.S. at 159-160, the court nonetheless

concludes, for the reasons that follow, that Counterclaims Five and Six are subject to dismissal under Rule 12(b)(6).

### 1. **Counterclaim Five**

In Counterclaim Five, Hokie Real Estate seeks damages against White and Hincker under 15 U.S.C. § 1120, based on false statements allegedly made in connection with declarations filed in 2005 and 2010 in support of Virginia Tech's efforts to renew its federal trademark registration. Specifically, Hokie Real Estate alleges that White and Hincker falsely declared that the term HOKIES was then in continuous use on all of the goods listed in the university's federal registration, when, in fact, there were no tie tacks, gold pins, brief cases, or bath robes bearing the HOKIES mark.

Section 1120 of Title 15 provides that a person who procures a trademark registration by fraud "shall be liable in a civil action by a person injured thereby for any damages sustained in consequences thereof." 15 U.S.C. § 1120. To prevail under this statute, "it is not enough for the plaintiff merely to establish fraud in the registration of the trademark"; the plaintiff "must also show that [it] sustained some damage in consequence of the fraud." Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 989 F.2d 985, 991 (8th Cir. 1993) (internal citation and quotation marks omitted). In this case, the court concludes that Hokie Real Estate has failed to plead sufficient facts to establish that it suffered recoverable damages as a result of any alleged fraud in the renewal of the university's trademark registration.

Hokie Real Estate's claim for damages under § 1120 is premised primarily on the effects of the instant action, including the fact that the company has been subject to significant attorneys' fees and other litigation costs. However, none of these claimed damages proximately resulted

from Virginia Tech's registration of the HOKIES mark or any statements made in support of its efforts to renew the registration. As Virginia Tech emphasizes in its motion to dismiss, any defects in the federal registration do not affect its trademark rights. The university's claimed trademark rights arise from its longstanding use of the HOKIES mark, not the registration itself. See, e.g., Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 267 n.1 (4th Cir. 2003) ("Federal registration of a mark does not establish ownership rights in the mark; rights in a registered mark are acquired through actual use, just as for unregistered marks."). As the United States Court of Appeals for the Eighth Circuit explained in Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.:

> Unlike the registration of a patent, a trademark registration of itself does not create the underlying right to exclude. Nor is a trademark created by registration. While federal registration triggers certain substantive and procedural rights, the absence of federal registration does not unleash the mark to public use. The Lanham Act protects unregistered marks as does the common law. Thus, even without its registrations, [the plaintiff] still would have had a substantially similar Lanham Act cause of action and an identical state law claim for infringement and unfair competition.

Gilbert/Robinson, 989 F.2d at 991 (internal citations omitted).

In Gilbert/Robinson, the plaintiff sued the defendant for infringement of its registered mark. Id. at 987. During discovery, the defendant learned that the plaintiff provided false information when it acquired the registration at issue. Id. at 988. Consequently, the defendant asserted a counterclaim for damages under 15 U.S.C. § 1120, alleging that the plaintiff had procured its registration by providing fraudulent information to the PTO. Id. A jury ultimately found that the plaintiff's registration was procured by fraud and awarded compensatory and

punitive damages to the defendant. Id. On appeal, the Eighth Circuit reversed the award of damages, holding that the defendant's alleged damages were not in the "zone of interests" that the Lanham Act is intended to protect. Id. at 990. In reaching its decision, the Eighth Circuit emphasized that "the Lanham Act's purpose of preventing consumer confusion favors resolving infringement suits on the merits . . . [and] should not be invoked to block Lanham Act enforcement of [plaintiff's] marks based upon an ancient nondisclosure to the PTO that has no bearing on whether [plaintiff] today has a superior right to use the marks in commerce." Id.

In this case, Hokie Real Estate's allegations regarding Virginia Tech's purportedly fraudulent procurement and renewal of the HOKIES registration do not affect Virginia Tech's underlying rights in the HOKIES mark. Virginia Tech's asserted trademark rights arise from the university's use of the HOKIES mark, not from its federal registration. Thus, even without its registration, Virginia Tech would be entitled to pursue the claims asserted in its complaint. Consequently, the litigation expenses that Hokie Real Estate has incurred while defending the instant action are not recoverable under § 1120, since they were not proximately caused by Virginia Tech's federal registration of the HOKIES mark or the registration renewals.[3] To the extent Hokie Real Estate also suggests that it has suffered lost business or income as a result of the allegedly fraudulently procured registration renewals, the court concludes that Hokie Real Estate's assertions in this regard are insufficient "to raise a right to relief above the speculative

---

[3] The court also notes that a separate provision of the Lanham Act provides for the recovery of legal fees in "exceptional cases." 15 U.S.C. § 1117. Consequently, courts have held that "reading § 1120 to allow for attorney's fees would circumvent § 1117." High Voltage Beverages, LLC v. The Coca-Cola Co., 2011 U.S. Dist. LEXIS 21423, at *18-19 (W.D. N.C. Mar. 3, 2011) (collecting cases which hold that litigation fees and expenses do not qualify as recoverable damages under § 1120); see also Gilbert/Robinson, 989 F.2d at 991 n.5 (noting that the Court "doubt[ed] whether infringement defense costs may be recovered under § 1120").

15

level." Twombly, 550 U.S. at 555. Based on the foregoing, Hokie Real Estate's claim for damages under § 1120 must be dismissed.

### 2. Counterclaim Six

The court also concludes that Counterclaim Six is subject to dismissal, because Hokie Real Estate lacks standing to assert a claim for false advertising under the Lanham Act. To establish standing for a false advertising claim, Hokie Real Estate must demonstrate that it is a competitor of Virginia Tech or that it has suffered a competitive business injury as a result of the alleged misuse of the federal registration symbol. See Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) (holding that a consumer does not have standing under the Lanham Act to sue for false advertising, and noting that "the Lanham Act is a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising") (internal citation and quotation marks omitted); see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 564 F. Supp. 2d 544, 553 (E.D. Va. 2008) (holding that the plaintiffs lacked standing to bring a claim for false advertising, since "they are not in competition with Defendant and their alleged injury is not the sort that the Lanham Act sought to prevent").

In this case, Hokie Real Estate has not asserted any facts which would suggest that it is a competitor of Virginia Tech, or that it has suffered a competitive business injury as a result of the alleged misuse of the federal registration symbol by the counterclaim defendants. Without such allegations, Hokie Real Estate does not have standing to pursue a claim for false advertising under the Lanham Act. Accordingly, Counterclaim Six is also subject to dismissal.

For all of the foregoing reasons, the court will grant the motion to dismiss filed by Virginia Tech, White, and Hincker, and White and Hincker will be dismissed from the case.

## Motions to Amend the Complaint and Reopen the Time for Expert Disclosures

This case is also before the court on Virginia Tech's motion for leave to file an amended complaint and its motion to reopen the time for expert disclosures. For the reasons stated during the hearing and for those that follow, both motions will be granted.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be "free[ly] give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Fourth Circuit explained in Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006), "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber, 438 F.3d at 426. Consequently, the Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Id. (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

In this case, there is no evidence of any bad faith on the part of Virginia Tech and the court is unable to conclude that the proposed amendments would be futile. Moreover, while the amended complaint includes new legal theories that will require additional discovery, the court is convinced that Hokie Real Estate will not suffer undue prejudice as a result of the proposed amendments. The motion to amend was filed well in advance of the original deadline for completing discovery, and the parties have agreed to an extension of that deadline as well as to a continuance of the trial date. Accordingly, for good cause shown, the court will grant Virginia Tech's motion for leave to file an amended complaint.

The court will also grant Virginia Tech's motion to reopen the time for expert disclosures. The original scheduling order contemplated the possibility of additional experts, and

17

the court is convinced that the circumstances of the instant case justify the university's request. However, as indicated during the hearing, Virginia Tech will be limited to two additional experts (a confusion expert and a dilution expert), and the court will leave open the possibility that Virginia Tech might be called upon to underwrite the costs of totally new discovery burdens that may be necessitated by the additional experts' reports.

## Conclusion

For the reasons stated, the court will grant the motion to dismiss filed by Virginia Tech, White, and Hincker. The court will also grant Virginia Tech's motion to amend the complaint and its motion to reopen the time for expert disclosures.[4]

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of June, 2011.

*[signature]*
Chief United States District Judge

---

[4] The court will issue an amended scheduling order that includes the new trial date and deadlines agreed upon by the parties.